Filed 8/8/16

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| CITY OF MONTEBELLO, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S219052 |
| v. | ) | |
| | ) | Ct.App. 2/1 B245959 |
| ROSEMARIE VASQUEZ et al., | ) | |
| | ) | Los Angeles County |
| Defendants and Appellants; | ) | Super. Ct. No. BC488767 |
| | ) | |
| ARAKELIAN ENTERPRISES INC., | ) | |
| | ) | |
| Intervener and Respondent. | ) | |
| _____ | ) | |

The City of Montebello sued three of its former councilmembers and a former city administrator, claiming they violated Government Code section 1090 by voting on a waste hauling contract in which they held a financial interest.[1]  It sought to invalidate the contract and force defendants to disgorge campaign contributions made by the company that was awarded the contract.  Defendants

---

[1]     "[C]ity officers or employees shall not be financially interested in any contract made by them in their official capacity . . . ."  (Gov. Code, § 1090, subd. (a).)  We sometimes refer to Montebello as the "City."

SEE CONCURRING AND DISSENTING OPINION

moved to strike the complaint under the anti-SLAPP statute. (Code Civ. Proc., § 425.16.)[2] The trial court denied the motion, and the Court of Appeal affirmed.

We hold, as did the courts below, that this case does not come within the statutory anti-SLAPP exemption for public enforcement actions. However, the votes cast in favor of the contract at issue were protected activity under section 425.16. The Court of Appeal's judgment to the contrary is reversed.

## I. BACKGROUND

In 2008, the franchise for residential waste collection in Montebello was held by intervener Arakelian Enterprises, doing business as Athens Disposal Company (Athens). Athens had been the City's residential waste hauler for over 40 years, but a number of companies provided commercial waste services. Athens's executive vice-president, Dennis Chiapetta, was approached by defendant Robert Urteaga, who suggested that Athens consider seeking an exclusive commercial waste hauling contract.[3]

During subsequent negotiations over adjustments to the residential contract, City representatives invited Athens to submit a proposal for a commercial and industrial waste hauling contract. Chiapetta agreed. He negotiated primarily with the city administrator, defendant Richard Torres, but also with the city attorney. Chiapetta said Torres had previously opposed the idea of an exclusive contract, but changed his mind because the waste hauling industry was undergoing

---

[2] SLAPP is an acronym for "strategic lawsuit against public participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57 (*Equilon*).) Hereafter, unspecified statutory references are to the Code of Civil Procedure.

[3] The timing of Urteaga's initial contact with Chiapetta is not entirely clear. Chiapetta's deposition testimony unequivocally stated both that it occurred in 2008, and that Urteaga was not yet a member of the city council. However, Urteaga was elected in 2007. The complaint alleges that the meeting occurred "[e]ither before or shortly after his election."

2

consolidation, landfills were preparing to close, and the City faced compliance issues under the Integrated Waste Management Act (Pub. Resources Code, § 40000 et seq.). Under a proposed comprehensive contract, Athens would pay the City $500,000, improve its residential services, and indemnify the City for any failure to comply with the Integrated Waste Management Act.

At a city council meeting, more than 20 people spoke against the contract. Nevertheless, it was approved by a three to two vote. Urteaga and codefendants Kathy Salazar and Rosemarie Vasquez voted in favor. Mayor William Molinari was in the minority. When presented with the finalized contract, Molinari declined to sign it because of various misgivings. He sought the advice of the city attorney, who told him he had a ministerial duty to execute the document. The city attorney advised Molinari in writing that a decision not to sign would "warrant a determination that for purposes of this Agreement only, you are deemed 'absent' thus vesting in the mayor pro tem the authority to execute this contract." The city attorney stated he would instruct the mayor pro tem to sign, with an annotation reflecting her authority to perform that duty in the mayor's absence.

Acting as mayor pro tem, Vasquez signed the contract with the city attorney's annotation. Thereafter, Molinari asked the Los Angeles County District Attorney's office to investigate possible money laundering by Salazar, along with Brown Act violations by all three councilmembers who had voted for the contract. (See Gov. Code, § 3500 et seq.) The office responded that Brown Act violations could not be investigated without some evidence of an illegal closed session, but that it would look into the money laundering allegation.

The district attorney's office ultimately filed no charges against Salazar. Its investigation revealed no impropriety in her alleged use of campaign donations from Athens to make loans to a nonprofit organization where she served as

3

executive director. Nor did Athens's donations to that organization disqualify Salazar from voting on the Athens contract. There was no evidence she had offered to vote for the contract in exchange for money. While a technical conflict of interest might "possibly" be established under Government Code section 1090, the district attorney did not believe Salazar had a corrupt motive in voting on the Athens contract.

Montebello resident Mike Torres sued the City in April 2009, seeking to invalidate the Athens contract on various grounds.[4] The trial court denied an anti-SLAPP motion filed by the City, and it appealed. Mayor Molinari and Councilmember Vasquez were up for reelection in November 2009. Montebello voters qualified a recall of Councilmembers Urteaga and Salazar, and a special election was set for February 2010. Athens contributed $37,300 to defeat Molinari, $45,000 to reelect Vasquez, and $352,912.73 to defeat the recall.[5] Despite those efforts Molinari was reelected, Vasquez was not, and Urteaga and Salazar were recalled. Richard Torres announced his retirement as city administrator shortly after the November election.

The City abandoned its appeal in the Mike Torres action, and substituted new counsel in place of the city attorney. In May 2011 it filed an amended answer, declaring it no longer disputed the material allegations of the petition. Athens, however, continued to defend its contract as real party in interest in the Mike Torres litigation.

---

**4** Mike Torres is evidently unrelated to defendant Richard Torres. His lawsuit is distinct from the suit subsequently filed by the City, which is the subject of this appeal.
**5** The City does not dispute defendants' claim that these contributions were properly reported; indeed, it relies on the forms Athens filed with the Fair Political Practices Commission as supporting evidence.

4

The City filed the action now before us in July 2012, represented by the same outside counsel who took over in the Mike Torres case.  The complaint states a single cause of action against Urteaga, Salazar, Vasquez, and Richard Torres for conflict of interest in violation of Government Code section 1090.  It seeks a declaration that the Athens contract is void, and an order requiring the councilmember defendants to disgorge the campaign contributions they received from Athens.

Three days after the City filed its complaint, the trial court in the Mike Torres action issued a writ of mandate setting aside the Athens contract.[6] Defendants then moved to strike the City's complaint under the anti-SLAPP statute.  Noting that the Athens contract had been voided, they contended the City's action was little more than a politically driven attempt to punish them for exercising their constitutional right of free speech in connection with issues of public interest related to their official duties.  The City claimed its action fell within the public enforcement exemption of section 425.16, subdivision (d) (hereafter, § 425.16(d)).  Alternatively, the City argued that voting by public officials is not protected under the First Amendment, citing *Nevada Commission on Ethics v. Carrigan* (2011) 564 U.S. 117 (*Carrigan*).  If the court were to disagree and consider the likelihood of the lawsuit succeeding, the City maintained that its case was sufficiently strong.

---

[6]      The court declared the contract void both because it imposed an unconstitutional property-related fee, and because Vasquez lacked the authority to sign it as mayor pro tem.  That judgment was ultimately affirmed.  The Court of Appeal sustained the trial court's findings that the contract was not validly executed, and that Salazar had no improper financial interest in it.  (*Torres v. City of Montebello* (2015) 234 Cal.App.4th 382, 389.)

5

The trial court denied the motion to strike. It ruled that the public enforcement exemption did not apply because, contrary to the requirements of section 425.16(d), the action was not "brought in the name of the people" by the city attorney as a public prosecutor. Deciding that defendants' actions were protected activity for purposes of section 425.16, the court went on to consider the likelihood the City would prevail. (§ 425.16, subd. (b)(1).) It found sufficient evidence of a conflict of interest in the showing that Urteaga and Richard Torres had encouraged Athens to seek an exclusive contract, and that Athens contributed to the campaigns of Urteaga, Salazar, and Vasquez after the contract was approved.

The Court of Appeal affirmed. It agreed that the public enforcement exception did not apply. However, it held that defendants' votes on the contract were *not* protected activity under section 425.16. Accordingly, the court did not review the question of whether the City could establish a probability it would prevail. We address the exemption first, because its application would take the case entirely out of the anti-SLAPP statutory scheme.

## II. DISCUSSION

### A. *The Public Enforcement Exemption*

The Legislature enacted section 425.16 in 1992, noting "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).) The statute authorizes defendants to file a special motion to strike in order to expedite the early dismissal of unmeritorious claims. (§ 425.16, subds. (b)(1), (f).) "[T]o encourage continued participation in matters of public significance," and to ensure "that this participation should not be chilled through abuse of the judicial process," the Legislature has specified that the anti-SLAPP statute "shall be construed broadly." (§ 425.16, subd. (a).)

6

The statute has always included an exemption for public enforcement actions.  (Stats. 1992, ch. 726, pp. 3523-3524.)  Section 425.16(d) provides:  "This section shall not apply to any enforcement action brought in the name of the people of the State of California by the Attorney General, district attorney, or city attorney, acting as a public prosecutor."  A split of authority has developed on the scope of this exemption.  On one side, two opinions from the Second District Court of Appeal have taken an expansive view.  (*City of Long Beach v. California Citizens for Neighborhood Empowerment* (2003) 111 Cal.App.4th 302 (*City of Long Beach*); *City of Los Angeles v. Animal Defense League* (2006) 135 Cal.App.4th 606 (*City of Los Angeles*).)  On the other, the Fourth District has applied the statutory language narrowly.  (*City of Colton v. Singletary* (2012) 206 Cal.App.4th 751 (*City of Colton*).)  We conclude that the narrow interpretation is consistent with the statutory language and with our decisions construing exceptions to the anti-SLAPP statute.

In *City of Long Beach*, the city sued an organization and its treasurer for violating municipal campaign contribution limits.  (*City of Long Beach*, *supra*, 111 Cal.App.4th at p. 304.)  In response to the defendants' anti-SLAPP motion, the city claimed its action was exempt.  The defendants argued that the exemption did not apply because the action was "not brought in the name of the people of the State of California," as required by section 425.16(d).  The Court of Appeal agreed.  It relied on legislative history to conclude that the public enforcement exemption was meant to apply to actions in the name of local authorities, as well as the people of California.  In a brief opinion, the court conceded that the history of section 425.16 was silent on this point.  It referred instead to comments in a bill analysis pertaining to a different statute:  section 998, which governs cost awards after offers to compromise.  The Legislature added a public enforcement

7

exemption to section 998 in 2001, using terms identical to those of section 425.16(d).  (§ 998, subd. (g)(2); Stats. 2001, ch. 153, § 1, p. 1444.)

The section 998 bill analysis explained that when section 425.16 was enacted in 1992, subdivision (d) was included "[a]t the request of the Attorney General's office."  (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 732 (2001–2002 Reg. Sess. July 3, 2001, p. 5.)  "Legislative staff involved in the drafting of the [anti-SLAPP] bill report that this provision was not included to provide a special exemption that otherwise would have been considered nonexistent, but rather to confirm the existence of the prosecutorial exemption assumed by the drafters."  (*Ibid*.)  The *City of Long Beach* court relied on this passage to support its belief that the section 998 exemption was intended to "apply broadly to 'civil enforcement actions' seeking injunctions, restitution and civil penalties, but not damages."  (*City of Long Beach*, *supra*, 111 Cal.App.4th at p. 307.)  Based on that inference, the court reasoned that nearly a decade after the anti-SLAPP statute was enacted, "the Legislature understood the language at issue in this case (albeit in the context of section 998) to encompass the type of lawsuit now before us."  (*Ibid*.)

The court also noted that a committee analysis of the first anti-SLAPP bill, which was ultimately vetoed, had reflected the Attorney General's concern over the unintended consequence of hindering enforcement of consumer protection laws by local as well as state agencies.  (*City of Long Beach*, *supra*, 111 Cal.App.4th at pp. 307-308.)  It pointed out that the anti-SLAPP statute was meant to thwart abusive lawsuits intended to chill the exercise of First Amendment rights, whereas " '[t]he prosecutor's motive derives from the constitutional mandate to assure that the laws of the state are uniformly enforced and to prosecute any violation of these laws . . . .' "  (*Id*. at p. 308.)  The court declared its unwillingness to allow political committees to "use section 425.16 as a shield

8

behind which to hide from otherwise valid local election regulations." (*Id*. at p. 309.)

*City of Los Angeles*, decided by the same division of the Second District, reaffirmed the *City of Long Beach* holding but declined to extend it further. Los Angeles sought protective orders against animal rights activists who had protested at a city employee's home. (*City of Los Angeles*, *supra*, 135 Cal.App.4th at pp. 609-610.) The court reversed the denial of the protesters' special motions to strike. It maintained its earlier view that "although the express language of the statute limits the exemption to enforcement actions 'brought in the name of the People of the State of California,' an otherwise exempted enforcement action brought in the name of a city or county itself, rather than 'the People' is not necessarily outside the ambit" of section 425.16 (d). (*City of Los Angeles*, at p. 618, citing *City of Long Beach*, *supra*, 111 Cal.App.4th at pp. 307-308.) Nevertheless, the court reasoned that "only actions brought by a governmental agency to enforce laws aimed generally at public protection qualify for this exemption to anti-SLAPP scrutiny." (*City of Los Angeles*, at p. 618.) Because the city was acting as an employer to protect its employee, not as a prosecutor protecting the public interest, the exemption did not apply. (*Id*. at p. 619.)

The *City of Los Angeles* court acknowledged that *City of Long Beach* was out of step with this court's subsequent anti-SLAPP jurisprudence. "[A]lthough [we] departed from the express language of section [425.16(d)], in [*City of Long Beach*], *supra*, 111 Cal.App.4th at pages 307-308, when we applied the exemption to a civil enforcement action that had not been brought literally 'in the name of the people of the State of California,' any further erosion of the specific requirements of that provision is unwarranted in light of the Supreme Court's subsequent admonition in *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735, that the plain language of section 425.16 is to be respected and that exceptions to

9

the statute's broad reach must not be lightly implied:  'The Legislature clearly knows how to create an exemption from the anti-SLAPP statute when it wishes to do so.'  (*Jarrow Formulas, Inc. v. LaMarche*, at p. 735.)"  (*City of Los Angeles*, *supra*, 135 Cal.App.4th at p. 620.)[7]

Subsequently, a divided court in the Fourth District disagreed with *City of Long Beach*.  In *City of Colton*, *supra*, 206 Cal.App.4th 751, a developer sued to enforce a contract with the city even though he had been convicted of procuring it through bribery.  When the city cross-complained, the developer filed an anti-SLAPP motion to strike the city's causes of action for unfair business practices and injunctive relief.  (*Id*. at pp. 758-759.)  The *City of Colton* court rejected the city's claim that its cross-action qualified for the public enforcement exemption.  The majority disagreed with *City of Long Beach* over whether an action must be brought in the name of the people to qualify for the exemption.  It found the reasoning in *City of Long Beach* inconsistent with the "clear and unambiguous" terms of section 425.16(d).  (*City of Colton*, at p. 777.)[8]  The dissent agreed that the public enforcement exception did not apply, but for a different reason:  it deemed section 425.16(d) inapplicable because the action was not brought by the city attorney.  Therefore, the dissent found it unnecessary to disagree with *City of Long Beach*.  (*City of Colton*, at p. 794 (dis. opn. of Richli, Acting P. J.).)

---

[7]     In *Jarrow Formulas, Inc. v. LaMarche*, *supra*, 31 Cal.4th at page 735, we declined to infer an exemption from section 425.16 for malicious prosecution actions, mentioning section 425.16(d) to make the point that the Legislature knows how to articulate exemptions when it so desires.

[8]     Addressing the *City of Long Beach* court's concern that violations of local campaign contribution laws might be shielded by the anti-SLAPP statute, the *Colton* majority noted that violations of city ordinances may be prosecuted in the name of the People of the State of California under Government Code section 36900, subdivision (a).  (*City of Colton*, *supra*, 206 Cal.App.4th at p. 777.)

10

Both the majority and the dissent in *City of Colton* are correct.  The terms of section 425.16(d) unambiguously limit the scope of the exemption to enforcement actions brought *both* "in the name of the people of the State of California" *and* "by the Attorney General, district attorney, or city attorney, acting as a public prosecutor."  The Legislature's choice of this specific language reflects its understanding that actions brought in the name of local entities, or by attorneys other than the public officers identified in the statute, are not included in the exemption.**9**

As to section 425.16, we have said that " '[t]he plain language of the statute establishes what was intended by the Legislature.' [Citation.)  ' "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to [extrinsic] indicia of the intent of the Legislature . . . ." ' [Citation.]" (*Jarrow Formulas, Inc. v. LaMarche*, *supra*, 31 Cal.4th at p. 735; see *Equilon*, *supra*, 29 Cal.4th at p. 61.)  We may consult the legislative record to supply context, but the fragments of history recited by the *City of Long Beach* court are at best inconclusive.  Moreover, expansive interpretation of exemptions from the anti-SLAPP statute is inconsistent with the Legislature's express intent that the statute's core provisions "shall be construed broadly."  (§ 425.16, subd. (a).)  We have repeatedly emphasized that the exemptions are to be "narrowly construed." (*Simpson Strong-Tie Co. v. Gore* (2010) 49 Cal.4th 12, 22 [commercial speech exemption of § 425.17, subd. (c)]; *Club Members for an Honest Election v. Sierra*

---

**9** We note that various statutes authorize city attorneys to prosecute actions in the name of the People of the state, including the Government Code section noted by the *City of Colton* majority.  (Gov. Code, § 36900; see, e.g., Bus. & Prof. Code, § 17206 [civil penalties for unfair competition under the UCL]; Civ. Code, § 52.1 [interference with civil rights]; Code Civ. Proc., § 731 [action to abate public nuisance].)

11

*Club* (2008) 45 Cal.4th 309, 316 [public interest exemption of § 425.17, subd. (a)].)[10]

Here, the City's action was not brought in the name of the People by the city attorney's office, acting as a public prosecutor. Instead, with private counsel and in its own name, the City seeks to set aside a contract and obtain disgorgement of campaign contributions. The action does not qualify for the public enforcement exemption.

B. *Protected Activity*

In the absence of an applicable exemption, a special motion to strike under section 425.16 involves a two-step process. First, the moving defendant must make a prima facie showing "that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute." (*Equilon*, *supra*, 29 Cal.4th at p. 67.) If the defendant makes this initial showing of protected activity, the burden shifts to the plaintiff at the second step to establish a probability it will prevail on the claim. (*Ibid*.) The plaintiff need only state and substantiate a legally sufficient claim. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.) The plaintiff's evidence is accepted as true; the defendant's evidence is evaluated to determine if it defeats the plaintiff's showing as a matter of law. (*Ibid*.) The procedure is meant to prevent abusive SLAPP suits, while allowing "claims with the requisite minimal merit [to] proceed." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 94.)

---

**10** *City of Long Beach v. California Citizens for Neighborhood Empowerment*, *supra*, 111 Cal.App.4th 302, and *City of Los Angeles v. Animal Defense League*, *supra*,135 Cal.App.4th 606, are disapproved insofar as they are inconsistent with this opinion.

12

The City contends defendants cannot make the threshold showing that their votes fell within the scope of section 425.16.  It relies on *Carrigan*, *supra*, 564 U.S. 117, for the proposition that voting by elected officials is not protected under the First Amendment.  In *Carrigan*, the Nevada Commission on Ethics ruled that a city councilmember had violated a conflict of interest statute by voting to approve a hotel/casino project on which his long-time friend and campaign manager had worked as a paid consultant.  (*Id*. at p. 120.)  The councilmember challenged the constitutionality of the statute.  The Nevada Supreme Court sustained the challenge, holding that the act of voting by a public officer is speech protected by the First Amendment.  (*Id*. at pp. 120-121; see *Carrigan v. Commission on Ethics* (Nev. 2010) 236 P.3d 616, 621.)

The high court reversed, noting that conflict of interest rules are a long-established feature of federal and state law.  (*Carrigan*, *supra*, 564 U.S. at pp. 122-124.)  It reasoned that "restrictions upon legislators' voting are not restrictions upon legislators' protected speech," because "a legislator's vote is the commitment of his apportioned share of the legislature's power to the passage or defeat of a particular proposal.  The legislative power thus committed is not personal to the legislator but belongs to the people; the legislator has no personal right to it."  (*Id*. at pp. 125-126.)  "[T]he act of voting [is] . . . nonsymbolic conduct engaged in for an independent governmental purpose."  (*Id*. at p. 127.)

The Court of Appeal below found *Carrigan* controlling.  It concluded that defendants' votes on the Athens contract did not implicate their right to free speech or convey any symbolic message.  "To hold otherwise," said the court, "would cause the anti-SLAPP statute to swallow all city council actions and require anyone seeking to challenge a legislative decision on any issue to first make a prima facie showing of the merits of their claim."

13

*Carrigan*, however, is not dispositive here. The Legislature did not limit the scope of the anti-SLAPP statute to activity protected by the constitutional rights of speech and petition. It went on to include "any act . . . *in furtherance* of" those rights. (§ 425.16, subd. (b)(1), italics added.) We must give meaning to this statutory term, under settled principles of statutory construction. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1118.) The Legislature's directive that the anti-SLAPP statute is to be "construed broadly" so as to "encourage continued participation in matters of public significance" supports the view that statutory protection of acts "in furtherance" of the constitutional rights incorporated by section 425.16 may extend beyond the contours of the constitutional rights themselves. (§ 425.16, subds. (a), (b)(1); see *Briggs*, at pp. 1119-1120.)[11]

The Legislature spelled out the kinds of activity it meant to protect in section 425.16, subdivision (e): "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral

_____

[11] As defendants point out, the Legislature saw fit to include the free speech protections of both the state and federal Constitutions in the anti-SLAPP statute, and "the California liberty of speech clause is broader and more protective than the free speech clause of the First Amendment." (*San Leandro Teachers Assn. v. Governing Bd. of San Leandro Unified School Dist.* (2009) 46 Cal.4th 822, 842; see § 425.16(b)(1).) The Court of Appeal gave no consideration to defendants' rights under our state Constitution. On the other hand, defendants make no specific argument supporting broader protection under the liberty of speech clause than under the First Amendment for votes cast by elected officials. We need not consider that constitutional issue, given our conclusion on the scope of the statutory protection provided by section 425.16.

14

statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

Because of these specifications, courts determining whether a cause of action arises from protected activity are not required to wrestle with difficult questions of constitutional law, including distinctions between federal and state protection of free expression. "The only means specified in section 425.16 by which a moving defendant can satisfy the requirement is to demonstrate that the defendant's conduct . . . falls within one of the four categories described in subdivision (e), defining subdivision (b)'s phrase, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue.' " (*Equilon*, *supra*, 29 Cal.4th at p. 66; see *Vargas v. City of Salinas* (2009) 46 Cal.4th 1, 17-18 (*Vargas*); *Jarrow Formulas, Inc. v. LaMarche*, *supra*, 31 Cal.4th at p. 734; *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) As explained in *Schaffer v. City and County of San Francisco* (2008) 168 Cal.App.4th 992, courts determining whether conduct is protected under the anti-SLAPP statute look not to First Amendment law, but to the statutory definitions in section 425.16, subdivision (e). (*Schaffer*, at p. 1001; accord, *City of Costa Mesa v. D'Alessio Investments* (2013) 214 Cal.App.4th 358, 372; see *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1548-1549.)

Requiring the moving party to make a constitutional case in support of every anti-SLAPP motion would be inconsistent with the Legislature's desire to

15

establish an efficient screening mechanism for "disposing of SLAPP's quickly and at minimal expense to taxpayers and litigants." (*Equilon*, *supra*, 29 Cal.4th at p. 66.) The statutory categories provided in section 425.16, subdivision (e) provide objective guidelines that lend themselves to adjudication on pretrial motion. (See *Equilon*, at p. 65.) Here, the councilmembers' votes, as well as statements made in the course of their deliberations at the city council meeting where the votes were taken, qualify as "any written or oral statement or writing made before a legislative . . . proceeding." (§ 425.16, subd. (e)(1).) Anything they or City Administrator Torres said or wrote in negotiating the contract qualifies as "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative . . . body . . . ." (§ 425.16, subd. (e)(2).)

No conflict arises between *Carrigan*'s rule that city council votes are not protected by the First Amendment and the definitions of section 425.16, subdivision (e), due to the leeway provided by the "in furtherance" term of the statute. The councilmembers' participation in the meeting that preceded the vote was constitutionally protected activity. "[P]ublic meetings, at which council members discuss matters of public interest and legislate, are conduct in furtherance of the council members' constitutional right of free speech in connection with public issues and issues of public interest. 'Under the First Amendment, legislators are "given the widest latitude to express their views" and there are no "stricter 'free speech' standards on [them] than on the general public." [Citation.]' (*Levy v. City of Santa Monica* (2004) 114 Cal.App.4th 1252, 1261.)" (*Holbrook v. City of Santa Monica* (2006) 144 Cal.App.4th 1242, 1247-1248; see *Bond v. Floyd* (1966) 385 U.S. 116, 136; *Carrigan*, *supra*, 564 U.S. at pp.129-132, conc. opn. of Kennedy, J.) The councilmember defendants' votes were cast in

16

furtherance of their rights of advocacy and communication with their constituents on the subject of the Athens contract.[12]

There is an important exception to the protections established by the statutory categories set out in section 425.16, subdivision (e). In *Flatley v. Mauro* (2006) 39 Cal.4th 299 (*Flatley*), we held that "section 425.16 cannot be invoked by a defendant whose assertedly protected activity is illegal as a matter of law and, for that reason, not protected by constitutional guarantees of free speech and petition." (*Flatley*, at p. 317.) We emphasized that section 425.16 was expressly intended to protect *valid* speech and petitioning activity. (*Flatley*, at p. 317; see § 425.16, subd. (a); *Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1365.)

The City contends the illegal conflict of interest that infected the councilmember defendants' votes deprives them of protection under section 425.16. This assertion of illegality is premature. The first step of the anti-SLAPP analysis is limited to whether a claim arises from protected activity. We made it clear in *Flatley* that conduct must be illegal *as a matter of law* to defeat a defendant's showing of protected activity. The defendant must concede the point, or the evidence conclusively demonstrate it, for a claim of illegality to defeat an

---

[12]     We note that *Carrigan*'s holding has no application to defendant Richard Torres. As the city administrator, he had no vote on the contract.

We also note that, unlike *Carrigan*, this case presents no issue concerning the constitutionality of a statute restricting legislators' participation in debate. (See *Carrigan*, *supra*, 564 U.S. at pp. 121-122 ["If Carrigan was constitutionally excluded from voting, his exclusion from 'advocat[ing]' at the legislative session was a reasonable time, place and manner limitation"].) If the councilmember defendants in this case had no conflict of interest, as they claim, there was no restriction on their participation in the debate at the council or in their consultations with constituents, even though *Carrigan* establishes that their votes were not constitutionally protected.

17

anti-SLAPP motion at the first step.  (*Flatley*, *supra*, 39 Cal.4th at pp. 316-318, 320.)

We do not minimize the seriousness of the City's conflict of interest allegations.  However, at this early stage of the litigation, defendants vigorously dispute those allegations, both as a matter of law and a question of fact.  As to the law, they rely on *Woodland Hills Residents Assn., Inc. v. City Council* (1980) 26 Cal.3d 938, 945-947, which held that the Political Reform Act (Gov. Code, § 8100 et seq.) does not bar city councilmembers from acting on matters involving contributors.  We noted that campaign contributions are constitutionally protected, and "do not automatically create an appearance of unfairness."  (*Woodland Hills*, at p. 947.)  The bribery statutes, as well as the Political Reform Act itself, provide "[a]dequate protection against corruption and bias."  (*Ibid*.)  In *Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1091-1092, we observed that Government Code section 1090 et seq. are in pari materia with the Political Reform Act.  *Lexin* involved a statutory exception to Government Code section 1090's conflict of interest provision.  (*Lexin*, at p. 1085 et seq.)  We construed the relevant Government Code provisions to be consistent with parallel Political Reform Act provisions, rendering the laws regulating "government contracts consistent with the laws governing government decisions more generally."  (*Lexin*, at p. 1092.)

On the facts, defendants deny any quid pro quo in connection with the Athens campaign contributions.  The City concedes that its claim depends on inferences to be drawn from circumstantial evidence of the councilmember defendants' advocacy and votes in favor of the Athens contract, followed by their receipt of the campaign contributions.  This state of the case forecloses a resolution at the first step of the anti-SLAPP inquiry.  "If . . . a factual dispute exists about the legitimacy of the defendant's conduct, it cannot be resolved within the first step but must be raised by the plaintiff in connection with the plaintiff's

18

burden to show a probability of prevailing on the merits." (*Flatley*, *supra*, 39 Cal.4th at p. 316.)

Accordingly, the City's reliance on the alleged illegality of defendants' conduct gains it no traction on the question of whether its cause of action arises from protected activity. The Court of Appeal did not reach the second-step issue of whether the City could establish a likelihood of success. It will have the opportunity to do so on remand.

We address one other matter that troubled the Court of Appeal: the concern that affording anti-SLAPP protection to these defendants would chill the rights of those seeking to challenge legislative decisions. The court's apprehension was based on a misreading of *San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343 (*San Ramon*). In *San Ramon*, a fire district challenged a county retirement board's decision to increase contributions payable by the district and its employees. (*Id*. at pp. 347-348.) The court affirmed the denial of an anti-SLAPP motion, holding that the board's "collective action" in requiring additional contributions did not implicate its "rights of free speech or petition." (*Id*. at p. 353.)

The *San Ramon* court drew a distinction between action taken by a government body and the expressive conduct of individual representatives. "[T]he fact that a complaint alleges that a public entity's action was taken as a result of a majority vote of its constituent members does not mean that the litigation challenging that action *arose from* protected activity, where the measure itself is not an exercise of free speech or petition. Acts of governance mandated by law, without more, are not exercises of free speech or petition." (*San Ramon*, *supra*,

19

125 Cal.App.4th at p. 354.)[13]  The court noted that "an action against individual lawmakers, challenging their vote cast in the exercise of individual legislative prerogative," might arguably "be held to arise from conduct in the furtherance of the exercise of speech rights, protected by section 425.16." (*San Ramon*, at p. 356.)  No individual board members were sued in *San Ramon*, however, so the court did not reach that question.

Here, the Court of Appeal seized on the *San Ramon* court's observation that holding acts of governance to be protected activity under section 425.16 "would significantly burden the petition rights of those seeking mandamus review for most types of governmental action.  Many of the public entity decisions reviewable by mandamus or administrative mandamus are arrived at after discussion and a vote at a public meeting.  [Citation.]  If mandamus petitions challenging decisions reached in this manner were routinely subject to a special motion to strike," the result would be to "chill the resort to legitimate judicial oversight over potential abuses of legislative and administrative power . . . ." (*San Ramon*, *supra*, 125 Cal.App.4th at pp. 357-358.)

These comments pertained only to the *San Ramon* court's reservations about burdening actions challenging *government decisions*, not the acts of

---

**13**     In *Vargas*, we made it clear that when a public entity's act *is* one taken in furtherance of the right of free expression, it is protected by section 425.16.  At issue in that case were a city's publicly funded communications opposing a pending ballot measure.  We concluded that this advocacy was protected activity: "[T]he statutory remedy afforded by section 425.16 extends to statements and writings of governmental entities and public officials on matters of public interest and concern that would fall within the scope of the statute if such statements were made by a private individual or entity." (*Vargas*, *supra*, 46 Cal.4th at p. 17.)  The *Vargas* holding has no application here.  Defendants' participation in the making of a government contract is not expressive activity of the kind that might be engaged in by private individuals or entities.

20

individual officials. It is not necessary to sue government officers in their personal capacities to challenge the propriety of a government action. Notably, here the Athens contract was successfully challenged in a citizen's suit brought against the City. We have observed that the Legislature was specifically concerned with actions against public officials *as individuals* when it reconsidered the scope of section 425.16 in 1997. (*Vargas*, *supra*, 46 Cal.4th at pp. 18-19.)

"Section 425.16 was first enacted in 1992. In 1997, in response to several Court of Appeal decisions that had narrowly construed the scope of the statute, the Legislature amended the measure to clarify its intent that the provisions of the statute are to be interpreted broadly. (Stats. 1997, ch. 271, § 1 [amending § 425.16, subd. (a)].) A legislative analysis of this amendment approvingly quoted a passage from a then recent law review article that identified as 'a typical SLAPP suit scenario' a situation in which an abusive lawsuit is brought against both public officials and private individuals. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1296 (1997–1998 Reg. Sess.) as amended June 23, 1997, p. 2, quoting Sills, *SLAPPS: How Can the Legal System Eliminate Their Appeal?* (1993) 25 Conn. L.Rev. 547 (Sills article)." (*Vargas*, *supra*, 46 Cal.4th at p. 19, fn. 9.) " 'Just as SLAPPs filed against individuals have a 'chilling' effect on their participation in government decision making, SLAPPs filed against public officials, who often serve for little or no compensation, may likely have a similarly 'chilling' effect on their willingness to participate in governmental processes.' " (*Ibid.*, quoting the Sills article, *supra*, at p. 550.)

The *San Ramon* court's distinction between public agencies and individual officials was reaffirmed in *Schwarzburd v. Kensington Police Protection & Community Services Dist. Bd.* (2014) 225 Cal.App.4th 1345 (*Schwarzburd*), which also centered on votes by public representatives. There, a local board as well as individual board members were named respondents in a writ proceeding

21

challenging a merit bonus awarded to a city official. (*Id*. at p. 1349.) The court followed *San Ramon* in holding that the action did not arise from protected activity insofar as it targeted the board as an entity. (*Id*. at p. 1353.) However, it held that the actions of the individual board members were protected by the anti-SLAPP statute. The petition claimed they had violated board policy by voting to extend a meeting, and discussing and voting on a matter that was not properly noticed. They were sued not "simply because they voted, but based on *how* they voted and expressed themselves." (*Id*. at p. 1355.)

The *Schwarzburd* court noted that the claims against the board members arose out of "protected First Amendment voting and legislative deliberative activities," without considering *Carrigan*'s holding precluding First Amendment protection for votes. (*Schwarzburd*, *supra*, 225 Cal.App.4th at p. 1353.) Its conclusion, however, is consistent with our reasoning that votes taken after a public hearing qualify as acts *in furtherance* of constitutionally protected activity. And *Schwarzburd*, like this case, demonstrates that elected officials may assert the protection of section 425.16 when sued over how they voted without chilling citizens' exercise of their right to challenge government action by suing the public entity itself.

## III.  DISPOSITION

We reverse the Court of Appeal's judgment, and remand for further proceedings consistent with the views expressed above.

**CORRIGAN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CHIN, J.**
**CUÉLLAR, J.**

**CONCURRING AND DISSENTING OPINION BY LIU, J.**

The City of Montebello (City) sued three of its former councilmembers and a former city administrator, claiming they violated Government Code section 1090 by voting for a waste-hauling contract in exchange for campaign contributions from the contractor. Defendants filed an anti-SLAPP motion under Code of Civil Procedure section 425.16, subdivision (b)(1) (hereafter section 425.16(b)(1)), claiming that their votes were acts in furtherance of their constitutional right to free speech. Settled law makes clear that the vote of a legislator is not protected activity under the First Amendment to the United States Constitution, and the free speech clause of the California Constitution (art. I, § 2, subd. (a)) provides no independent basis for such protection. Yet the court concludes that the anti-SLAPP statute protects the councilmembers' votes anyway.

Today's decision expands the anti-SLAPP statute beyond its proper bounds, making it harder to combat public corruption in government contracting and other abuses of power. Because the anti-SLAPP statute does not cover the act of voting by an elected official, I respectfully dissent from today's contrary holding.

Government Code section 1090, subdivision (a) states that "city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members." This statute reflects the "truism that a person cannot serve two masters simultaneously." (*Thomson v. Call* (1985) 38 Cal.3d 633, 637.) "The duties of public office demand the absolute loyalty and undivided, uncompromised allegiance of the

individual that holds the office." (*People v. Honig* (1996) 48 Cal.App.4th 289, 314.) Section 1090 recognizes that " 'an impairment of impartial judgment can occur in even the most well-meaning men when their personal economic interests are affected by the business they transact on behalf of the Government.' " (*Stigall v. City of Taft* (1962) 58 Cal.2d 565, 570, quoting *U.S. v. Mississippi Valley Generating Co.* (1961) 364 U.S. 520, 549.)

The defendant councilmembers, facing a lawsuit alleging that their votes on the waste-hauling contract violated Government Code section 1090, filed an anti-SLAPP motion pursuant to section 425.16(b)(1), which states: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." The question is whether the councilmembers' votes were acts in furtherance of their constitutional right of free speech under section 425.16(b)(1).

In *Nevada Commission on Ethics v. Carrigan* (2011) 564 U.S. 117 (*Carrigan*), the United States Supreme Court held that a legislator's vote is not an exercise of speech protected by the First Amendment. Instead, "a legislator's vote is the commitment of his apportioned share of the legislature's power to the passage or defeat of a particular proposal. The legislative power thus committed is not personal to the legislator but belongs to the people; the legislator has no personal right to it. . . . [T]he legislator casts his vote 'as trustee for his constituents, not as a prerogative of personal power.' In this respect, voting by a legislator is different from voting by a citizen. While 'a voter's franchise is a personal right,' '[t]he procedures for voting in legislative assemblies . . . pertain to

2

legislators not as individuals but as political representatives executing the legislative process.' " (*Id.* at pp. 125–126.)

Although the California Constitution's free speech clause (Cal. Const., art. I, § 2, subd. (a)) has sometimes been interpreted more broadly than the First Amendment, "defendants make no specific argument supporting broader protection under the liberty of speech clause than under the First Amendment for votes cast by elected officials." (Maj. opn., *ante*, at p. 14, fn. 11.) Nothing in the language or history of California's free speech clause suggests a concern with protecting legislative votes, and I see no reason to depart from *Carrigan*'s sound analysis in construing our state constitutional guarantee. The act of voting by a municipal legislator is not an exercise of the "right of petition or free speech under the United States Constitution or the California Constitution." (§ 425.16(b)(1).)

Today's opinion nonetheless concludes that the councilmembers' votes are protected activity under section 425.16(b)(1) because, in the court's view, the statute's language covering "any act . . . in furtherance of" the constitutional right of petition or free speech broadens the scope of protected activities "beyond the contours of the constitutional rights themselves." (Maj. opn., *ante*, at p. 14.) Code of Civil Procedure section 425.16, subdivision (e) (hereafter section 425.16(e)) defines the phrase " 'act in furtherance of [a constitutional] right of petition or free speech' " to include "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law" and "(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." The court says the councilmembers' votes fall within these definitions. (Maj. opn., *ante*, at p. 16.)

3

I do not read today's opinion to mean that a legislator's act of voting qualifies as a "written or oral statement or writing" under sections 425.16(e)(1) and 425.16(e)(2) simply because it involves the legislator writing or saying the word "yea" or "nay" during a legislative proceeding. If that were the case, then arguably electronic voting (pushing a button "yea" or "nay") would fall outside the scope of this language. As the catchall category of section 425.16(e) makes clear, sections 425.16(e)(1) and 425.16(e)(2) are intended to capture types of "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16(e)(4).) The dispositive question here is whether a legislator's act of voting is a type of conduct in furtherance of the constitutional right of free speech.

On this question, the court says: "Beyond doubt, the councilmembers' participation in the meeting that preceded the vote was constitutionally protected activity. '[P]ublic meetings, at which council members discuss matters of public interest and legislate, are conduct in furtherance of the council members' constitutional right of free speech in connection with public issues and issues of public interest. "Under the First Amendment, legislators are 'given the widest latitude to express their views' and there are no 'stricter "free speech" standards on [them] than on the general public.' [Citation.]" [Citation.]' [Citations.] The councilmember defendants' votes were cast in furtherance of their rights of advocacy and communication with their constituents on the subject of the Athens contract." (Maj. opn., *ante*, at pp. 16–17, fn. omitted.)

But this last sentence characterizing the councilmembers' votes runs directly counter to the reasoning in *Carrigan*. There the high court considered and rejected the argument that a legislator's act of voting has an " 'expressive character' " (*Carrigan*, *supra*, 564 U.S. at p. 128) of the sort posited above:

4

"Carrigan and Justice Alito say that legislators often ' "us[e] their votes to express deeply held and highly unpopular views, often at great personal or political peril." ' [Citation.] How do they express those deeply held views, one wonders? Do ballots contain a check-one-of-the-boxes attachment that will be displayed to the public, reading something like '( ) I have a deeply held view about this; ( ) this is probably desirable; ( ) this is the least of the available evils; ( ) my personal view is the other way, but my constituents want this; ( ) my personal view is the other way, but my big contributors want this; ( ) I don't have the slightest idea what this legislation does, but on my way in to vote the party Whip said vote "aye" '? There are, to be sure, instances where action conveys a symbolic meaning—such as the burning of a flag to convey disagreement with a country's policies, [citation]. But the act of voting symbolizes nothing. It *discloses*, to be sure, that the legislator wishes (for whatever reason) that the proposition on the floor be adopted, just as a physical assault discloses that the attacker dislikes the victim. But neither the one nor the other is an act of communication. [Citation.]

"Moreover, the fact that a nonsymbolic act is the product of deeply held personal belief—even if the actor would like it to *convey* his deeply held personal belief—does not transform action into First Amendment speech. Nor does the fact that action may have social consequences—such as the unpopularity that cost John Quincy Adams his Senate seat resulting from his vote in favor of the Embargo Act of 1807, [citation]. However unpopular Adams' vote may have made him, and however deeply Adams felt that his vote was the right thing to do, the act of voting was still nonsymbolic conduct engaged in for an independent governmental purpose." (*Carrigan*, *supra*, 564 U.S. at pp. 126–127.)

Suppose a councilmember in this case had said before casting his vote, "I am voting for this waste-hauling contract because I believe it's the best value for the City's money." What *Carrigan* elucidates is that while this statement has

5

expressive value and is protected speech, the councilmember's *act of voting itself* has no additional expressive value over and above the accompanying statement. (See *Carrigan*, *supra*, 564 U.S. at p. 127 [analogizing to *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.* (2006) 547 U.S. 47, 66, as an instance where "expressive value was 'not created by the conduct itself but by the speech that accompanies it' "].)  As noted, "a legislator's vote is the commitment of his apportioned share of the legislature's power to the passage or defeat of a particular proposal"; beyond that, it "symbolizes nothing." (*Carrigan*, at pp. 125–126.)  A legislator's vote therefore cannot be understood as an act "in furtherance of" the constitutional right of free speech within the meaning of section 425.16.

The court's contrary holding will make it harder to enforce civil laws against public corruption.  "[U]nder Code of Civil Procedure section 425.16, subdivision (c), any SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees.  The fee-shifting provision was apparently intended to discourage such strategic lawsuits against public participation by imposing the litigation costs on the party seeking to 'chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' (*Id.*, subd. (a).)" (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131.)  We have recognized that a fee-shifting statute that awards attorney fees to prevailing defendants carries the risk of chilling meritorious lawsuits. (*Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, 101.)  Today's extension of anti-SLAPP protections, including attorney fees for prevailing defendants, to the act of voting by legislators will potentially lead to underenforcement of Government Code section 1090 as well as other conflict of interest laws designed to ensure integrity and deter abuse of power in government decisionmaking on matters beyond public contracting. (See Gov. Code, §§ 8920, subd. (b)(5), 84308, subd. (c), 87100 et seq.)

6

For the reasons above, I would affirm the judgment of the Court of Appeal on the ground that the defendant councilmembers' votes were not protected by Code of Civil Procedure section 425.16.  In all other respects, I join the opinion of the court.

**LIU, J.**

**I CONCUR:**

**KRUGER, J.**

7

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** City of Montebello v. Vasquez

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 226 Cal.App.4th 1084
**Rehearing Granted**

_____

**Opinion No.** S219052
**Date Filed:** August 8, 2016

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Rolf M. Treu

_____

**Counsel:**

Revere & Wallace and Frank Revere for Defendants and Appellants.

AlvaradoSmith, Raul F. Salinas, Mary M. Monroe; Leibold McClendon & Mann, Leibold McClendon and John G. McClendon for Plaintiff and Respondent.

Joseph T. Francke and Steven J. André for Californians Aware, First Amendment Coalition, First Amendment Project, Penelope Canan, Michael Harris, Libertarian Law Council, Klaus J. Kolb and Center for Constitutional Jurisprudence as Amici Curiae on behalf of Plaintiff and Respondent.

No appearance for Intervener and Respondent.

Janis L. Herbstman for California State Association of Counties and League of California Cities as Amici Curiae.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Frank Revere
Revere & Wallace
355 South Grand Avenue, Suite 2450
Los Angeles, CA  90071-1560
(213) 943-1333

Raul F. Salinas
AlvaradoSmith
633 West Fifth Street, Suite 1100
Los Angeles, CA  90071
(213) 229-2400