Filed 10/25/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARY'S KITCHEN et al., | |
| Plaintiffs and Respondents, | G061693 |
| v. | (Super. Ct. No. 30-2021-01224070) |
| CITY OF ORANGE, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, John Gastelum, Judge. Affirmed.

Everett Dorey, Seymour B. Everett III, Samantha E. Dorey, and Christopher D. Lee for Defendant and Appellant.

Paul Nicholas Boylan, Brooke Weitzman, and Benjamin Davis for Plaintiff and Respondents.

\* \* \*

This is an appeal by defendant City of Orange (the City) from an order denying an anti-SLAPP motion. (See Code Civ. Proc., § 425.16.) The underlying lawsuit alleges a violation of the Ralph M. Brown Act (Gov. Code, § 54950 et seq.; Brown Act). Plaintiff Mary's Kitchen provides homeless services in the City of Orange. Prior to the filing of this lawsuit, the city manager for the City terminated Mary's Kitchen's license, citing safety concerns. Subsequently, the city council held an executive (i.e., closed) session to discuss potential unspecified litigation. Afterward, the city attorney exited the meeting and declared that the council had "unanimously confirmed" the termination of Mary's Kitchen's license. The subsequent minutes for the meeting reiterated that description. The Brown Act requires that any contemplated action or topic of discussion be posted in an agenda at least 72 hours prior to the meeting. (Gov. Code, § 54954.2, subd. (a)(1).) The meeting agenda did not mention anything about Mary's Kitchen's license.

Plaintiffs Mary's Kitchen and Gloria Suess (chief executive officer and president of Mary's Kitched) filed a verified complaint/petition for writ of mandate against the City. The City filed an anti-SLAPP motion, arguing that because the agenda described the meeting as discussing legal matters, the complaint/petition arose out of protected activity. The City takes the position that no action was taken at the meeting, and that the unanimous approval described in the minutes simply reflects *inaction*—i.e., that the city council chose to do nothing to override the city manager's decision to terminate the license. The court denied the motion, concluding the complaint targeted the City's failure to provide adequate notice of the confirmation of the license termination rather than anything that was said at the meeting. We agree with this assessment and further conclude that the "unanimous confirm[ation]" is evidence of an action: ratification. Accordingly, we affirm the order denying the anti-SLAPP motion.

2

FACTS

Plaintiffs' verified complaint/petition for writ of mandate alleges the following: Mary's Kitchen "is the sole homeless service provider for adults without minor children in [the] City of Orange, and has operated in Orange for nearly thirty-six years, starting in 1986." Mary's Kitchen and the City "entered into a license agreement to use City property for Mary's Kitchen in 1993, and the City . . . renewed the agreement on several occasions. In June 2019, the license agreement was extended for five years, until 2024."[1] On or about June 18, 2021, the city manager of the City unilaterally cancelled Mary's Kitchen's license agreement with the City.

On or about July 10, 2021, the City published the agenda for a city council meeting to be held on July 13, 2021. The agenda did not mention anything about Mary's Kitchen. The agenda did include an item designated for closed session: "Conference with Legal Counsel—Anticipated litigation pursuant to Government Code Section 54956.9[, subdivision] (d)(2)-(4). (One case)." The minutes for that meeting, which were approved about a month later, state the following: "REPORT ON CLOSED SESSION ACTIONS [¶] During Regular Session, City Attorney Sheatz reported that the City Council unanimously confirmed the actions of the City Manager and staff in terminating the license agreement between the City and Mary's Kitchen."

On September 10, 2021, plaintiffs' representatives delivered a letter to the City demanding that the City cure and correct alleged Brown Act violations that prevented plaintiffs and the public from being present during and participating in the City's action to cancel Mary's Kitchen's license before the City took that action. Plaintiffs also sought assurances that the City would cease and desist any future violations of the Brown Act. Four days later, the City refused plaintiffs' demands. The

---

[1] It is not clear in the record why this agreement, which seems to operate as a lease, is designated as a license agreement. However, we follow the parties' lead in referring to it as such.

3

City took the position that it had not taken any action during the closed session. Plaintiffs' complaint/petition for writ of mandate, filed later that month, alleged Brown Act violations and sought declaratory and injunctive relief.

The City filed an anti-SLAPP motion.[2] Filed with the motion was a declaration from Gary Sheatz, the City Attorney. He declared, "The purpose of the July 13, 2021 closed-session meeting was not to seek ratification of the termination of the License Agreement, as the City Manager's action itself was legally sufficient and effective to terminate the License Agreement. There was no vote, no ratification, no decision by the City Council whatsoever to ratify the termination of the License Agreement or to terminate the License Agreement at the July 13, 2021 closed-session meeting. Additionally, in the face of the threat of litigation regarding the City Manager's termination of the License Agreement, the City Council did not make any decision to overturn the termination, nor did the Council make any affirmative decision to ratify the termination." "They 'unanimously confirmed' the actions of the City Manager and City Staff by doing nothing in the face of threatened litigation to reverse the City Manager's decision."

The City also sought and obtained judicial notice of a recent ruling by Judge David Carter of the Central District of California. There, Mary's Kitchen had sought a preliminary injunction stopping the termination of the license agreement. Judge Carter denied the injunction, ruling that the City had an absolute right to terminate the license agreement, and that it could do so without a city council meeting through the administrative power delegated to the city manager.

---

[2] The City also filed a demurrer, which the court ultimately denied. That order is not before us in this appeal. (See *Tyco Industries, Inc. v. Superior Court* (1985) 164 Cal.App.3d 148, 153 ["An order overruling a demurrer is nonappealable, and ordinarily is to be reviewed upon appeal from the judgment entered after trial"].)

The trial court ultimately denied the anti-SLAPP motion, concluding that the complaint did not arise from protected activity as defined in Code of Civil Procedure section 425.16. The court reasoned that the present lawsuit arises from the failure of the City to provide adequate notice of the items to be discussed at the council meeting rather than out of any exercise of protected activity. Because the court concluded that the present lawsuit does not arise out of protected activity, it did not reach the second prong of the analysis, which is whether plaintiffs had established a probability of prevailing. The City timely appealed from the denial of the anti-SLAPP motion.

DISCUSSION

On appeal, the City contends the court erred in denying the anti-SLAPP motion. Its argument starts from the premise that no action actually took place at the council meeting, and since the only thing that happened there was a discussion in anticipation of litigation, it follows that the complaint arises from protected activity. We are unpersuaded.

Code of Civil Procedure section 425.16 (the anti-SLAPP statute) provides that a special motion to strike may be filed against "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . ." (*Id*., subd. (b)(1).) The trial court conducts a potentially two-step inquiry to evaluate an anti-SLAPP motion. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).) First, the court must decide whether the defendant has met its burden of establishing the plaintiff's claim *arises from* protected activity in which the defendant has engaged. (*Ibid.*) Second, assuming defendant has met its burden, the court determines whether the plaintiff has established "there is a probability . . . the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1).) In meeting this burden, "the plaintiff must show the claim has 'at least "minimal

5

merit."'"" (*Bonni*, at p. 1009.)  Because the trial court never reached the second step of the inquiry, our focus is on the first step.

The anti-SLAPP statute identifies four categories of protected activity:  "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or on an issue of public interest."  (Code Civ. Proc., § 425.16, subd. (e)(1)-(4).)

In determining whether plaintiffs' claims arise from protected activity, "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity."  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)  "At this first step, courts are to 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.'  [Citation.]  The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity."  (*Bonni, supra*, 11 Cal.5th at p. 1009.)  "We review the parties' pleadings, declarations, and other supporting documents at this stage of the analysis only 'to determine what conduct is actually being challenged, not to determine whether the conduct is actionable.'"  (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 491.)

6

We review the court's ruling de novo, applying the legal principles discussed above. (*Falcon Brands, Inc. v. Mousavi & Lee, LLP* (2022) 74 Cal.App.5th 506, 518.) We conclude the court did not err.

The dispute between the parties turns primarily on whether the complaint is interpreted as arising from an unprotected *action* by the City, or protected *speech* by the City. As set forth above, the anti-SLAPP statute defines protected activity primarily in terms of "written or oral" *statements*. (Code Civ. Proc., § 425.16, subd. (e)(1)-(3).) Only subdivision (e)(4) applies to "conduct," but even then, it must be conduct "in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

The distinction between unprotected action and protected speech was fleshed out in *San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343, 354 (*San Ramon*). There, a county retirement system was sued based on increases to a pension program. (*Id*. at pp. 347-348.) The board of the retirement system held a hearing in which an actuary explained the rationale for the increase, and the board held a vote to adopt the increases. (*Id.* at p. 348.) When a fire protection district sued the county retirement system for abusing its discretion in setting the amount of the pension increases, the retirement system filed an anti-SLAPP motion, which was denied. (*Id.* at pp. 348-349.) The *San Ramon* court affirmed the denial. The court emphasized that what *gave rise* to the suit was not the board hearing or the votes thereafter (i.e., speech), but instead the action of the county retirement system increasing the pension contribution requirements. (*Id.* at pp. 353-354.) The court reasoned, "Thus, the fact that a complaint alleges that a public entity's action was taken as a result of a majority vote of its constituent members does not mean that the litigation challenging that action *arose from* protected activity, where the measure itself is not an exercise of free speech or petition. Acts of governance mandated by law, without more, are not exercises of free speech or petition." (*Id.* at p. 354.)

7

By contrast *Holbrook v. City of Santa Monica* (2006) 144 Cal.App.4th 1242 provides an example where the action itself was protected activity under the anti-SLAPP statute. There two city council members sued the City of Santa Monica on the ground that city council meetings were running too late, seeking an order enjoining meetings past 11:00 p.m. (*Id.* at pp. 1245-1246.) The City of Santa Monica filed an anti-SLAPP motion, which was granted, and which was affirmed on appeal. The court concluded that the lawsuit was based on protected activity: not only the speech that occurred at meetings past 11:00 p.m. but also the meetings themselves. (*Holbrook*, at pp. 1247-1248.)

The case *Schwarzburd v. Kensington Police Protection & Community Services Dist. Bd.* (2014) 225 Cal.App.4th 1345 (*Schwarzburd*) is particularly instructive in drawing the distinction between unprotected activity and protected speech. There, a minority of board members on the board of a community services district sued the district *and the majority individual board members*, seeking to unwind a vote to raise the pay of a police chief on substantive grounds (alleging it was an illegal retroactive pay increase) and on the procedural ground that the board had violated certain requirements in extending the duration of a board meeting past 10:00 p.m. (*Id.* at p. 1349.) The defendants filed an anti-SLAPP motion, which the trial court denied. (*Ibid.*) The Court of Appeal reversed in part. Specifically, the court held that the action against the district was barred under *San Ramon* because the pay raise was simply a governing action. However, the lawsuit against the *individual* board members arose out of protected speech because it was necessarily based on how they voted. (*Schwarzburd*, at pp. 1353-1355; see *City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 425-427 [holding that suits against individual board members based on their vote arise from protected conduct and citing both *San Ramon* and *Schwarzburd* with approval].)

8

Applying that distinction here, we interpret the complaint as arising from unprotected *action*—the unanimous confirmation—and the fact that the agenda had not given proper notice of that action. Specifically, paragraph 17 of the complaint sets forth the minutes of the council meeting, which are entitled "REPORT ON CLOSED SESSION *ACTIONS*" (italics added), and which go on to describe the unanimous confirmation of the termination of the license agreement. In paragraph 27, in describing the basis for the Brown Act violation, Plaintiffs' reference "Respondent's secret, unnoticed meeting *and actions* on July 13, 2021, in closed session . . . ." (Italics added.) The complaint sets forth several paragraphs explaining the importance of open meetings and public input under the Brown Act. We do not read the complaint as being based on the conversation the city council had with the city attorney in anticipation of litigation. And unlike *Schwarzburd*, plaintiffs did not sue the individual city council members.

The City repeatedly and stridently argues in its briefs that there was no evidence of an action taken at the council meeting. But the City has failed to appreciate the importance of the words "unanimously confirmed" in the meeting minutes. A reasonably plausible inference from those words is that the city council confirmed—i.e., ratified—the city manager's decision to terminate the license agreement, and the city council did so unanimously—i.e., all council members voted to do so. This is certainly plaintiffs' interpretation of those words, and the complaint arises from that interpretation. The City derides this interpretation as "speculation and mischaracterization," but it is not speculation to give words their ordinary meaning.

The City is of the view that the only declarant in the motion below who had personal knowledge of the meeting was the city attorney, and he declared nothing happened; therefore, we are compelled to credit that testimony. However, that turns the evidentiary rules on their head. "We do not weigh credibility or the weight of the evidence. Instead, we accept as true the evidence favorable to the *plaintiff* and evaluate the defendant's evidence only to determine if it has defeated the plaintiff's evidence as a

9

matter of law." (*Cruz v. City of Culver City* (2016) 2 Cal.App.5th 239, 244, italics added.) Here, a trier of fact could easily conclude that the city attorney's testimony is self-serving and contradicts the meeting minutes. Ultimately, our task in this first step of the anti-SLAPP analysis is not to determine whether an action in *fact* occurred; it is simply to determine whether plaintiffs' complaint arises from an unprotected action or from protected speech. It may well be that the City ultimately proves that nothing happened at that meeting. But it is crystal clear that plaintiffs base their lawsuit on a claim that an action occurred, which is supported by a plausible inference from the meeting minutes. The action of ratifying the termination of the licensing agreement, assuming it occurred, is not conduct in furtherance of free speech; it is ordinary business.[3] (*Area 51 Productions, Inc. v. City of Alameda* (2018) 20 Cal.App.5th 581, 596-600 [holding that the termination of a license agreement by a city was not protected activity].) Accordingly, the complaint does not arise from protected activity, and the anti-SLAPP motion was properly denied.[4]

---

[3] The City argues that the ratification was wholly unnecessary because the city manager's termination of the license agreement required no ratification to become effective. This contention, however, goes to the merits of plaintiffs' claim (specifically, the issue of whether plaintiffs' suffered prejudice) and has no bearing on whether the claim arises out of protected activity.

[4] The City has argued that even if the allegations in the complaint itself do not arise from protected activity, the law should be changed to allow a defendant to show that a lawsuit was subjectively motivated by a desire to chill free speech. However, our high court has already spoken on that subject: "The anti-SLAPP statute cannot be read to mean that 'any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under [the anti-SLAPP statute], whether or not the claim is *based on* conduct in exercise of those rights.'" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 77.)

## DISPOSITION

The order denying the City's anti-SLAPP motion is affirmed.  Plaintiffs shall recover costs on appeal.


SANCHEZ, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.