Filed 1/29/24  Wilson v. County of Placer CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| CHARLES J. WILSON, | C095427 |
| Plaintiff and Respondent, | (Super. Ct. No. PC20210420) |
| v. | |
| COUNTY OF PLACER, | |
| Defendant and Appellant. | |

Plaintiff Charles J. Wilson, a former employee of the Placer County District Attorney's Office, brought a single claim for whistleblower retaliation under Labor Code section 1102.5 against defendant the County of Placer (the County or County).  The County moved to strike the complaint under the anti-SLAPP[1] statute, which permits a court to strike causes of action arising from an act in furtherance of the constitutional

---

[1]     SLAPP is an acronym for " 'strategic lawsuit against public participation.' " (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 85.)

1

right of free speech or petition. (Code Civ. Proc., § 425.16.)[2] The trial court denied the motion, finding that (1) while the County showed that Wilson's cause of action arose from activity protected by the anti-SLAPP statute, it failed to comply with a rule of court applicable to motions to strike and therefore failed to meet its burden, and (2) Wilson established a probability of prevailing on the merits of his claim. The County appeals.

We conclude that the County failed to meet its initial burden of showing that Wilson's claim arose from protected activity. Accordingly, while we disagree with the trial court's rationale, we will affirm the order denying the motion.

FACTUAL AND PROCEDURAL BACKGROUND

I

*Wilson's Allegations*

In 1998, the County hired Wilson as a deputy district attorney. Wilson worked there for years and was steadily promoted. On or about December 27, 2019, the County's sitting district attorney abruptly retired, making Wilson the County's acting district attorney.

On January 2, 2020, Tamara Uhler, the wife of County Supervisor Kirk Uhler, sent Wilson a text message that Wilson read and understood as an offer of "a quid pro quo bribe." Specifically, he interpreted the text message to mean that if Wilson agreed to hire Mrs. Uhler, her husband would help steer the County's Board of Supervisors towards appointing Wilson as the permanent district attorney.

On January 14, 2020, the County opened recruitment for the district attorney position.

On March 3, 2020, Wilson received a letter from the Fair Political Practices Commission (FPPC), asking if the district attorney's office intended to investigate

---

[2] Undesignated section references are to the Code of Civil Procedure.

allegations that had been filed against County Supervisor Uhler.  Wilson drafted a response to the letter stating that it would be a conflict of interest for the district attorney's office to conduct the investigation, and that Wilson wished to meet with the FPPC investigator.  Wilson did not send the letter, however.

On March 9, 2020, the County's human resources director and County Counsel informed Wilson that, per an order from the County Executive Officer, Wilson was placed on paid administrative leave pending appointment of the new district attorney.  Meanwhile, Wilson was locked out of his workplace and was not told why he was placed on leave.  Wilson believed he was placed on leave because the County sought to prevent him from coordinating with the FPPC investigation and/or because the County sought to discredit him as a witness in the FPPC investigation.

On March 19, 2020, County Counsel called Wilson and said she understood he had received an attempted bribe from the wife of a County Supervisor.  The next day, Wilson sent a letter to County Counsel and the new acting district attorney, complaining of retaliation and offering to provide a copy of the text message in a meeting.

On March 24, 2020, Wilson interviewed for the district attorney position.  In April 2020, another candidate, Morgan Gire, was hired for the job.  Wilson understood from Gire's prior announcement that Gire intended to demote Wilson if hired, which could jeopardize Wilson's retirement benefits.  As a result, on April 6, 2020, Wilson resigned.  Wilson exhausted his administrative remedies, and this suit followed.

II

*County's Investigation of Wilson*

Although the County's investigation into Wilson is not mentioned in the operative complaint, the investigation is central to the County's arguments in its anti-SLAPP motion.  We therefore describe it based on extrinsic evidence submitted by the parties.

On February 21, 2020, the County received an employee complaint against Wilson and others in his department.  The complaint alleged a toxic work environment,

3

discrimination, harassment, and intimidation by Wilson and several other managers in the district attorney's office. The County's human resources department commenced an investigation. On February 28, the County notified Wilson and the other employees, via letter, that they were subjects of an administrative investigation. Wilson also was informed on that day by the human resources director that he would receive a letter regarding the investigation. In the following weeks, the County received several additional employee complaints against Wilson and his team.

On March 9, 2020, the County Executive Officer placed Wilson on paid administrative leave to separate him from the complainants while the administrative investigation was pending.

On May 18, 2021, an investigator for the County contacted Wilson regarding the investigation into management at the district attorney's office. This was the first time Wilson was contacted about the investigation since February 2020.

III

*Procedural Background*

On March 18, 2021, Wilson brought this lawsuit against the County. On May 20, 2021, Wilson filed the operative first amended complaint (FAC), alleging one cause of action for whistleblower retaliation under Labor Code section 1102.5. The County filed its anti-SLAPP motion in response to the FAC on July 20, 2021, which Wilson opposed.

The trial court denied the motion. It first found that Wilson's claim arose from protected activity based on the County's investigation into Wilson, an investigation the trial court acknowledged was never mentioned in the FAC. However, it concluded that the County nonetheless failed to meet its burden on the first prong, because it did not adhere to California Rules of Court, rule 3.1322(a),[3] which requires the moving party in a

---

[3]    Undesignated rule references are to the California Rules of Court.

standard motion to strike to identify the specific language it seeks to have stricken in some circumstances.  The trial court further found that Wilson met his burden on the second prong by demonstrating a probability of prevailing, and denied the motion on both grounds.  The County appeals.

## DISCUSSION

The County argues that the trial court erred in denying its anti-SLAPP motion because (1) the County established that Wilson's claim arises out of the County's protected activities, (2) rule 3.1322(a) is inapplicable to a special motion to strike, and (3) Wilson failed to establish a probability of prevailing on his retaliation claim.  We conclude, among other things, that the County failed to meet its threshold burden of showing Wilson's claim arises out of protected activity and therefore affirm the denial of the motion.

### I

### *The Anti-SLAPP Statute*

The Legislature enacted the anti-SLAPP statute (§ 425.16) to protect defendants from meritless lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and to petition for the redress of grievances.  (§ 425.16, subd. (a).)  To that end, the statute establishes a procedure for weeding out such claims at an early stage of the litigation, limiting the costs of defending against such claims.  (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 642; *Baral v. Schnitt* (2016) 1 Cal.5th 376, 393 (*Baral*).)  The statute is to be broadly construed to protect the constitutional rights of petition and free speech.  (§ 425.16, subd. (a).)

An anti-SLAPP motion involves a two-step process.  (*Baral, supra*, 1 Cal.5th at p. 384.)  At the first step, the moving defendant bears the initial burden of establishing that the challenged claim arises from protected activity.  (§ 425.16, subd. (b)(1).)  If the

defendant meets this threshold showing, the cause of action shall be stricken unless the plaintiff can demonstrate a probability of success on the merits.  (*Baral,* at p. 384.)

We review an order granting an anti-SLAPP motion de novo, using the same two-step approach as the trial court.  (*Alpha & Omega Development, LP v. Whillock Contracting, Inc*. (2011) 200 Cal.App.4th 656, 663.)

## II

### *The County's Burden*

Before turning to the merits, we note that while our review is de novo, and it is the County's burden to show that Wilson's cause of action arises from protected activity, the County makes no meaningful effort to meet its burden in its opening brief.  Rather, it references the trial court's finding that the alleged adverse actions were " 'inextricably tied' " to the County's investigation into Wilson, which constitutes protected activity, and makes the puzzling claim that "[n]either party is challenging that finding."

Perhaps unsurprisingly, Wilson vociferously disputes this assertion, and the trial court's finding, in the respondent's brief.  Wilson further contends that, because the County failed to make a showing on the first prong in its opening brief, it has forfeited or waived its argument that the lawsuit arises from protected activity.  On reply, the County substantively argues that the alleged adverse employment actions all arise from the County's investigation of Wilson, which action it contends is protected under the anti-SLAPP statute.  (§ 425.16, subd. (e)(1) and (2).)  As the County fully briefed the issue *infra*, and has raised it again—albeit briefly—on appeal, we do not consider the issue forfeited.  Nonetheless, the County's sparse briefing on the issue of protected activity does little to satisfy its burden on the first prong.

## III

### *Rule 3.1322(a)*

Rather than grapple with the substance of the first prong (protected activity), the County argues that the trial court erred in finding that the rule of court applicable to

6

standard motions to strike also applies to anti-SLAPP motions.  The trial court concluded that because the County failed to comply with this rule, it could not succeed on the first prong.  We agree with the County that rule 3.1322(a) does not apply here.

Rule 3.1322(a) states that "[a] notice of motion to strike a portion of a pleading must quote in full the portions sought to be stricken except where the motion is to strike an entire paragraph, cause of action, count, or defense."  However, this rule applies to conventional motions to strike (§ 436), and there is no indication that it is meant to apply to special motions to strike, which are brought under a different statute (§ 425.16).  We analyzed this issue at length in the published portion of the related case, *Miszkewycz v. County of Placer* (Jan. 25, 2024, C095426)__Cal.App.5th__[2024 Cal.App. LEXIS 39], and need not repeat the full analysis here.  It suffices to say that, contrary to Wilson's assertions, our Supreme Court does not suggest in either *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995 (*Bonni*) or *Baral*, that the party bringing an anti-SLAPP motion must comply with rule 3.1322(a).  (*Miszkewycz v. County of Placer*, *supra*, at p.*9-*11.)  Moreover, rule 3.1322(b) sets forth the deadline for filing a conventional motion to strike (30 days after the pleading is filed (§ 435, subd. (b)), as opposed to the 60-day limit allowed for anti-SLAPPs (§ 425.16, subd. (f)), reflecting the Legislature's intent that rule 3.1322 apply solely to conventional motions to strike.  (*Miszkewycz*, at p.*11.)  Thus, the text of the rule of court, as well as the case law, suggest that rule 3.1322(a) does not apply to anti-SLAPP motions.

Further, the notice of motion states that the County *does* seek to strike the entire complaint, and its briefs are consistent with this request.  In other words, the County argues that the alleged adverse actions flow from the investigation into Wilson, and thus the sole cause of action arises entirely from protected activity; the County does not attempt to parse the cause of action into protected and unprotected activity.  Consequently, rule 3.1322(a), even if applicable to special motions to strike, would still not require the notice to quote the portions of the pleading to be stricken, since the

County seeks to strike an entire cause of action.**4**  Accordingly, we do not find rule 3.1322 relevant to our analysis.  We instead turn to the merits of the first prong.

IV

*Protected Activity*

A defendant moving to strike a cause of action under the anti-SLAPP statute has the initial burden to show that the cause of action arises from a protected activity.  (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 420.)  Section 425.16, subdivision (e) sets forth four kinds of activity the Legislature meant to protect under the statute.  (*City of Montebello v. Vasquez, supra*, 1 Cal.5th at p. 422.)  It defines protected activity to include:  "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  (§ 425.16, subd. (e).)

Here, only section 425.16, subdivision (e)(1) and (2) are implicated, as the County argues that its investigation of Wilson qualifies as an "official proceeding" under these categories.  The County is correct that an internal investigation by a state-created entity is an official proceeding authorized by law under section 425.16, subdivision (e)(1) and (2).  (*Jeffra v. California State Lottery* (2019) 39 Cal.App.5th 471, 482-483) (*Jeffra*).

---

**4**      We further note that the County's motion rests on facts not alleged in the FAC, i.e., the County's investigation into Wilson.  It is therefore unclear how the County's notice could identify the specific allegations to strike, where no such allegations exist.

8

Nonetheless, the County has failed to meet its burden to show that Wilson's retaliation claim "arises from" the investigation as defined by the anti-SLAPP statute.

The most significant weakness in the County's argument is that the asserted protected activity—the County's investigation of Wilson—is not mentioned in the operative complaint.  " 'As is true with summary judgment motions, the issues in an anti-SLAPP motion are framed by the pleadings.'  [Citations.]  Thus, the act or acts underlying a claim for purposes of an anti-SLAPP statute *is determined from the plaintiffs' allegations.*  [Citation.]  Because the issues to be determined in an anti-SLAPP motion are framed by the pleadings, we will not 'insert into a pleading claims for relief based on *allegations of activities that plaintiffs simply have not identified . . . .* It is not our role to engage in what would amount to a redrafting of [a] complaint in order to read that document as alleging conduct that supports a claim *that has not in fact been specifically alleged*, and then assess whether the pleading that we have essentially drafted could survive the anti-SLAPP motion directed at it.'  [Citation.]"  (*Med. Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 883.)

Here, Wilson does not allege that the investigation itself was wrongful.  Indeed, he does not allege anything about the investigation at all.  "[T]he moving defendant bears the burden of identifying all *allegations* of protected activity, and the claims for relief supported by them."  (*Baral, supra*, 1 Cal.5th at p. 396, italics added.)  As Wilson makes no mention of the investigation, the County does not and cannot point to allegations of protected activity in the FAC.  The County fails to meet its burden on this basis alone.  (*See, e.g.*, *Martin v. Inland Empire Utilities Agency* (2011) 198 Cal.App.4th 611, 627-628 ["Indeed, it is difficult, if not impossible, to see how defendants could have met [their] burden [on the first prong] with plaintiff's failure to specifically plead the allegedly defamatory statements"].)

Rather than grapple directly with this issue, the County instead argues that the adverse actions alleged in the FAC—placing Wilson on administrative leave, leading to

9

his constructive termination— "flow from and are inextricably tied to" the County's protected investigation. Put differently, because the County intends to assert the investigation in its own *defense*, as its legitimate reason for the alleged adverse actions, the County argues that Wilson's claim "arises from" the investigation.[5] Not so. As we explain, it is not enough for the alleged adverse action to flow from or relate to protected activity. Thus, even if we were to construe the FAC to encompass the investigation, the County still must show that the investigation is the core injury-producing conduct at the foundation of Wilson's claim. (*Oakland Bulk and Oversized Terminal, LLC v. City of Oakland* (2020) 54 Cal.App.5th 738, 753.) The County has failed to do so.

"[F]or anti-SLAPP purposes discrimination and retaliation claims arise from the adverse actions allegedly taken, notwithstanding the plaintiff's allegation that the actions were taken for an improper purpose. If conduct that supplies a necessary element of a claim is protected, the defendant's burden at the first step of the anti-SLAPP analysis has been carried, regardless of any alleged motivations that supply other elements of the claim." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 892.) " 'A claim may be struck under the anti-SLAPP statute 'only if the speech or petitioning activity *itself* is the wrong complained of, and *not just evidence of liability or a step leading to some different act for which liability is asserted*.' [Citation.] Put differently, to carry its burden at the first step, the defendant in a discrimination [or retaliation] suit must show that the complained-of adverse action, in and of itself, is an act in furtherance of its

---

[5] To evaluate a claim for whistleblower retaliation under Labor Code section 1102.5, the burden is first "on the plaintiff to establish, by a preponderance of the evidence, that retaliation for an employee's protected activities was a contributing factor in a contested employment action . . . . Once the plaintiff has made the required showing, the burden shifts to the employer to demonstrate, by clear and convincing evidence, that it would have taken the action in question for legitimate, independent reasons even if the plaintiff had not engaged in protected activity." (*Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 718.)

speech or petitioning rights.  Cases that fit that description are the exception, not the rule.' " (*Id.* at p. 890, italics added.)

Thus, our Supreme Court has clearly stated that in the unusual employment case where the defendant can succeed under prong one, the adverse action *itself* must be the speech or petitioning activity.  Here, the FAC alleges the County engaged in the following adverse actions:  (1) placed Wilson on administrative leave, (2) stated its intent to demote Wilson, leading to his constructive termination, and (3) generally created "hostile terms and conditions of [Wilson's] employment."  Yet the County has not shown, or tried to show, that any of these actions constitute "act[s] . . . in furtherance of [the County's] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue."  (§ 425.16, subd. (b)(1).)

Instead, the County argues that these adverse actions "flowed from" and are intertwined with the unpled investigation.  However, "[a] claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity."  (*Park v. Board Of Trustees of California State University* (2017) 2 Cal.5th 1057*,* 1060 (*Park*); see also *Wilson v. Cable News Network, Inc., supra*, 7 Cal.5th at p. 890 ["The anti-SLAPP statute does not apply simply because an employer protests that its personnel decisions followed, or were communicated through, speech or petitioning activity"].)  Accordingly, simply because Wilson was placed on leave and constructively terminated *following* its investigation into Wilson does not mean that Wilson's retaliation claim arose from the investigation for purposes of the anti-SLAPP statute.  In this sense, our case is distinguishable from *Jeffra, supra*, 39 Cal.App.5th 471, a case relied on by the County.  In *Jeffra*, the plaintiff alleged that his employer conducted a humiliating sham investigation into him in retaliation for filing a whistleblower complaint, which made him so anxious and fearful of termination that he resigned.  (*Id.* at pp. 479, 482.)  The appellate court found that "the investigation was the

11

'wrong complained of'–the adverse action that supplies a necessary element of plaintiff's retaliation claim." (*Id.* at p. 482.) Here, as discussed, Wilson does not complain that the investigation was the wrong complained of, or the adverse action. *Jeffra* thus is inapplicable.

We instead find *Park* instructive. In *Park*, the plaintiff brought a discrimination suit against a university, alleging that he was denied tenure based on his national origin, and the university filed an anti-SLAPP motion in response. (*Park, supra*, 2 Cal.5th at p. 1061.) The Supreme Court rejected the university's argument that the plaintiff's suit arose from protected activity, i.e., from the university's decision to deny him tenure and the communications that led up to and followed the decision. (*Id.* at p. 1073.) In doing so, it drew a distinction between "activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim." (*Id.* at p. 1064.) It reasoned that the elements of the plaintiff's claim "depend not on the grievance proceeding, any statements, or any specific evaluations of him in the tenure process, but only on the denial of tenure itself and whether the motive for that action was impermissible." (*Id.* at p. 1068.) Thus, it noted that the plaintiff could have omitted allegations of communicative acts or filing a grievance and still stated a discrimination claim. (*Ibid.*)

Likewise, here, not only could Wilson have omitted allegations of the investigation to state his claim, he in fact, did omit such allegations. As in *Park*, the crux of Wilson's claim is the County's decision to place Wilson on administrative leave and his subsequent retirement, and whether the County did so as retaliation for Wilson's alleged whistleblower activities. Again, the unpled investigation is not the alleged "wrong" in Wilson's claim.

The County also cannot meet its burden on the first prong because it fails to address a crucial piece of the statutory language. Section 425.16 subdivision (e)(1) and (2) protects "*any written or oral statement or writing*" made before any official

12

proceeding authorized by law (§ 425.16, subd. (e)(1)) or made in connection with an issue under consideration or review by any official proceeding authorized by law (§ 425.16, subd. (e)(2)). "[T]he existence of an official proceeding does not necessarily transform any claim related to that proceeding into an action within the ambit of section 425.16, subdivision (e)(2) [or (e)(1)]. Such an interpretation ignores the plain language of the statute, which requires a claim be based on a written or oral statement made in connection with the proceeding." (*Verceles v. Los Angeles Unified School District* (2021) 63 Cal.App.5th 776, 787.)

Thus, even assuming the investigation into Wilson constitutes an official proceeding, the County fails to identify any written or oral statement or writing made during the investigation as the basis of Wilson's claim. This is fatal to the County's argument. The Second District recently addressed a similar issue in *Verceles*, in which a teacher's school district removed him from school and reassigned him to the local district office while the school district investigated him for three years for alleged misconduct. (*Verceles*, *v. Los Angeles Unified School District, supra*, 63 Cal.App.5th at p. 780.) Eventually the district terminated his employment, and he filed suit for discrimination and retaliation, alleging that the investigation was neither prompt nor thorough. (*Ibid.*) In reviewing the ruling on the anti-SLAPP motion, the appellate court held that the teacher's claims did not arise from protected activity, because "[i]n the absence of any oral or written statements from which [the plaintiff's] claims arise, the District's decisions to place [the plaintiff] on leave and terminate his employment are not protected activity within the meaning of section 425.16, subdivision (e)(2), even if those decisions were made in conjunction with an official investigation. [Citations.]" (*Id.* at p. 788.) As in *Verceles*, the County has failed to show that Wilson's claim arises from any oral or written statements, as required by subdivision (e)(1) and (2) of the statute. Accordingly, the County cannot meet its burden on the first prong, even though its employment decisions were made in connection with its investigation.

13

Based on the foregoing, we conclude that the anti-SLAPP motion was properly denied.[6]

---

[6] Though not dispositive—as we affirm the denial of the motion regardless—we nonetheless briefly address Wilson's argument that the trial court abused its discretion by permitting the County to file its anti-SLAPP motion more than 60 days after filing the complaint. (*Platypus Wear, Inc. v. Goldberg* (2008) 166 Cal.App.4th 772, 782 [trial court's ruling on the request to file belated anti-SLAPP motion reviewed for abuse of discretion].) A special motion to strike "may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper." (§ 425.16, subd. (f).) The 60-day clock begins when the original complaint is filed, unless later amendments contain new causes of action arising from protected activity, in which case the 60 days starts anew at the filing of the amended complaint. (*Newport Harbor Ventures LLC v. Morris Cerullo World Evangelism, supra*, 4 Cal.5th 637, 644.)

In this case, Wilson filed his original complaint on March 18, 2021. The parties met and conferred on April 21; on May 11, Wilson's counsel agreed to amend the pleading within the next few days, though did not specify the anticipated amendments. On May 20, having received no amended complaint, the County applied ex-parte for additional pages on its anticipated anti-SLAPP motion, and Wilson served his FAC the next day. The FAC alleged the same cause of action as the original complaint, but removed numerous paragraphs of allegations from the original complaint, including allegations of the County's investigation into Wilson. The County filed its anti-SLAPP motion on July 20, 2021, arguing in reply that although it was filed more than 60 days after the original complaint, the trial court should permit the late filing under the doctrine of estoppel and general principles of equity. The trial court agreed, permitted the late filing, and ruled on the merits. As the County relied on Wilson's representation that it would file an amended complaint, which was substantively amended, and then filed its anti-SLAPP shortly thereafter, we see no basis to disturb the trial court's decision to permit the late filing. Indeed, Wilson was apprised of the County's intent to file an anti-SLAPP motion, does not assert that he suffered any prejudicial effects from the delay, and the anti-SLAPP was filed within 60 days of the substantively amended complaint. We find no abuse of discretion.

## DISPOSITION

The order denying the special motion to strike is affirmed.  Wilson shall recover his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


_____\s\_____,
Krause. J.


We concur:


_____\s\_____,
Robie, Acting P. J.


_____\s_____,
Wiseman, J.*

---

\*      Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.