Filed 5/22/25  Renderos v. Clearview AI CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| Steven Renderos et al.,<br><br>        Plaintiffs and Respondents,<br><br>v.<br><br>Clearview AI, Inc.,<br><br>        Defendant and Appellant. | A167179<br><br>(Alameda County<br>Super. Ct. No. RG21096898) |

Defendant Clearview AI, Inc. (Clearview) sells a facial recognition service.  To create the service, Clearview "scraped" billions of photographs of people from the internet and applied a proprietary algorithm to generate a "facial vector"—or "faceprint," in plaintiffs' terminology—for each face. Clearview maintains a database that includes this biometric information. The company's customers, which it says are now limited to government entities (and are "predominantly" law enforcement agencies), upload a "probe" photo of an individual's face into Clearview's application and it returns any images in the database that have a "close" facial-vector match—a matching faceprint—along with the address (i.e., the URL) of the webpage at which each such image was obtained.

Plaintiffs are two organizations and four individuals who have sued Clearview for common law appropriation of likeness, invasion of the right to privacy under article 1, section 1 of the California Constitution, and violation

1

of the Unfair Competition Law (Bus. & Prof. Code, §§ 17200 et seq.). The case comes to us after the trial court denied Clearview's motion to strike the complaint under the anti-SLAPP statute (Code Civ. Proc., § 425.16), concluding that the conduct giving rise to plaintiffs' claims was not protected activity within the meaning of the statute.[1] We affirm.

## BACKGROUND

### I.

Our recitation of the facts is based primarily on the allegations of plaintiffs' complaint, a declaration by Clearview's general counsel submitted in support of the motion to strike, and deposition testimony of the declarant submitted by plaintiffs in opposition.

According to Clearview, it collects only publicly available images from the internet, along with the associated webpage URL and image metadata. Plaintiffs allege in their complaint that the collection is nonetheless done in violation of many websites' terms of service, and without notice to, or consent by, the individuals who are depicted in the photos. Clearview populates a database with the collected information and with the "facial vectors" or biometric identifiers Clearview has created by applying its machine-learning algorithm to the images. The database is accessible by an application (app) available to licensed users. When the user uploads a probe photo to the app, the app applies its algorithm to the photo to create a facial vector that it compares against those in the database, and then returns potential matching images with their associated webpage URLs. According to the complaint, by default Clearview retains the probe images on its servers indefinitely.

---

[1] Undesignated statutory references are to the Code of Civil Procedure. SLAPP stands for " 'strategic lawsuit against public participation.' " (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 85 & fn. 1.)

Clearview's general counsel stated in his declaration that the company does not add the probe images or the facial vectors derived from them to its searchable database, and that its website allows California residents to access and prevent photographs of themselves from being returned as search results in Clearview's app. However, the images are not removed from the database.

According to the complaint, by February 2020 Clearview had shared its technology with "more than 2,200 law enforcement departments, government agencies, and private companies across 27 countries." In 2022, Clearview settled litigation in Illinois with a consent judgment that, with narrow exceptions not at issue here, limited its customers in the United States to governmental entities. In his declaration, Clearview's general counsel stated that the company's customers are "predominantly, if not exclusively, in law enforcement," and that to his knowledge no private entity has used the app since about August 1, 2020. He added that customers are permitted to use the app "only for law-enforcement and investigative purposes," and that each individual user "must be expressly authorized to do so by a government agency." The purpose of the app, he wrote, "is to help law enforcement entities identify criminal suspects, victims, and persons of interest as quickly and as accurately as possible."

Users are required to enter a case number and crime type to identify each search on the app, which can be reviewed by the governmental organization's administrative users, but neither those entries nor the uploaded probe photos are visible to Clearview itself. Clearview thus relies on the government agency to ensure that searches are being run for appropriate purposes. Clearview's terms of service prohibit users from disclosing "the Services"—defined to include the app and the database—"[t]o

3

the extent legally permissible." They further provide that search results "are not intended nor permitted to be used as admissible evidence in a court of law or any court filing," and that users "must conduct further research and investigation to verify the accuracy of any search result."

## II.

Plaintiffs filed their complaint in April 2021, describing themselves as "two community-based organizations and four political activists," among them immigrants, "who have engaged in political speech critical of the police, ICE, and immigration policy in both their personal and professional capacities." In their first cause of action, for common law appropriation of likeness, plaintiffs allege that Clearview "knowingly and surreptitiously collected Plaintiffs' and Plaintiffs' members' names, photographs, biometric information, and other identifiers . . . by scraping images from websites in violation of many of the websites' policies prohibiting such conduct," and used those things "to its advantage by copying them, saving them, and selling access to them to private and government entities worldwide."

In their second cause of action, for invasion of privacy under the state constitution, plaintiffs allege that they have a reasonable expectation of privacy in their names, photographs, biometric information, and other identifiers, and have legally protected interests in preventing unwanted access to their data and in conducting personal activities without observation. The violation is "serious and highly offensive" because Clearview's conduct is surreptitious, in violation of websites' terms of service and cease-and-desist letters from the websites; because biometric information is based on immutable physical characteristics, so that once it is entered into the database, "that individual permanently loses anonymity and privacy"; and because the violation places plaintiffs' and plaintiffs' members' "lives and livelihood[s] in danger, both from being misidentified to law-enforcement and

4

immigration agencies and from being correctly identified and targeted for retaliation for their public political stances."

In their final cause of action against Clearview, plaintiffs allege that the company engages in unlawful and unfair business practices because its conduct violates the constitutional right to privacy, Penal Code section 502 (unauthorized access to computers, computer systems, and computer data), the common law right against appropriation of likeness, and the terms of use of the websites where Clearview scraped the data. They allege that they lost money or property as a result of the wrongful conduct because Clearview "has deprived them of the opportunity to profit by licensing" the use of their likenesses and because they have "expended resources in understanding the extent of Clearview's misappropriation of their identities, images, likenesses, and biometric data."

The complaint seeks both injunctive relief and compensatory damages.

### III.

After unsuccessfully attempting to remove the action to federal court and transfer it to multidistrict litigation pending in Illinois, Clearview responded to the complaint with a motion to strike under the anti-SLAPP statute. (§ 425.16.) It argued that its "creation and use of its app" is protected speech under the First Amendment, and that its delivery of search results in connection with potential criminal investigations is protected under subdivision (e)(2) of section 425.16 as a statement made in connection with an official proceeding, or under subdivision (e)(4) as speech concerning an issue of public interest. It further argued that plaintiffs cannot demonstrate a probability of prevailing on their claims. The trial court found good cause to permit plaintiffs to take limited discovery, and plaintiffs thereafter opposed the motion.

5

In denying the motion, the court concluded that Clearview had not carried its burden to show that plaintiffs' claims arose from protected activity. With respect to subdivision (e)(2) of section 425.16, the court found that Clearview's sale of information was "not for the purpose of supporting the deliberation of a government body on an issue under consideration or review," and that it "would be a stretch to describe the police investigation of each and every discrete crime as the 'consideration or review' of a matter by a government entity." In the court's view, Clearview was simply selling "a law enforcement tool" analogous to the sale of "cars, uniforms, and computer systems to law enforcement." With respect to subdivision (e)(4), the court found that "the biometric analysis and maintenance of the database is not 'speech,'" nor "an action 'in connection with a public issue or an issue of public interest.'" The court observed that, while crime is a public issue, "that does not mean that any sale of any good or service to law enforcement is a contribution to the public discussion about matters such as high crime rates, the appropriate role of the police in providing social services, or discriminatory enforcement of the law." The court also concluded that "the sale of the biometric data is not protected by the First Amendment," explaining that a person "does not have a first Amendment right to appropriate a photograph or likeness of another person and then use it for a profit-making business. This is not a situation where a bystander shows a police officer a photograph taken on a phone of a suspect who was caught fleeing from a crime scene. This is a business that is based on aggregating and analyzing photographs of California residents and then selling the data related to those images." Having found that plaintiffs' claims were not based on protected activity, the court did not analyze whether plaintiffs had established a probability of prevailing.

6

Clearview filed a timely notice of appeal.

## DISCUSSION

## I.

The anti-SLAPP statute authorizes a special motion to strike causes of action arising from any act "in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) The purpose of the law is "to protect against 'lawsuits brought primarily to chill' the exercise of speech and petition rights." (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 143 (*FilmOn*).) It seeks to accomplish this purpose by "allow[ing] defendants to request early judicial screening of legal claims targeting free speech or petitioning activities." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 880–881.) We review the trial court's order granting or denying an anti-SLAPP motion de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.)

Resolution of an anti-SLAPP motion proceeds in two steps. First, the moving defendant must establish that the challenged claims arise from activity protected by the statute. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) Second, for each claim based on protected activity, the plaintiff must show that the claim has at least minimal merit. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.)

When determining whether conduct is protected under the anti-SLAPP statute, we "look not to First Amendment law, but to the statutory definitions in section 425.16, subdivision (e)." (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 422.) The moving defendant must "demonstrate that *the defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described" in that subdivision. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1063 (*Park*).)

To evaluate whether allegedly protected conduct gives rise to a particular claim, "courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park,* at p. 1063.) "Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral, supra,* 1 Cal.5th at p. 394.)

## II.

Before we come to the two-step analysis, plaintiffs ask us to find that their lawsuit falls under the public interest exception to the anti-SLAPP law. (§ 425.17, subd. (b).)  We would resolve that issue first if it were properly before us, because the applicability of the exception would mean that there was no legal basis for Clearview's motion.  (*Takhar v. People ex rel. Feather River Air Quality Management Dist.* (2018) 27 Cal.App.5th 15, 24; *Tourgeman v. Nelson & Kennard* (2014) 222 Cal.App.4th 1447, 1460.)  But as plaintiffs acknowledge, they did not raise the public interest exception in the trial court, and we generally do not consider arguments or theories raised for the first time on appeal.  (*Cordoba Corp. v. City of Industry* (2023) 87 Cal.App.5th 145, 154.)  While we may exercise our discretion to address a new issue of law based on undisputed facts (*Sheller v. Superior Court* (2008) 158 Cal.App.4th 1697, 1709), plaintiffs have offered no explanation for their failure to raise the argument before now.

Without deciding the question, we note that plaintiffs' argument faces an apparent difficulty.  Among other requirements, the public interest exception applies only if "[t]he plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member." (§ 425.17, subd. (b)(1).)  In their complaint, however, plaintiffs seek not only injunctive relief but also compensatory damages.  They argue that in *Batis v. Dun & Bradstreet Holdings, Inc.* (9th

Cir. 2024) 106 F.4th 932, the court found the public exception applicable even though the plaintiff was seeking damages. (*Id.* at pp. 936–937.) But *Batis* was a putative class action. The plaintiff "requested all relief on behalf of all members of the alleged class," and the court found only that it did not matter "whether all class members are likely to ultimately establish entitlement to all forms of requested relief, as long as nothing in the complaint inherently precludes them from doing so." (*Id.* at p. 937.) Plaintiffs here do not seek to represent a class, and there is nothing in the complaint that would make it possible for members of the public to recover damages in this action. At a minimum, this apparent problem may have led plaintiffs to decide against raising the argument initially. In this context, we decline to excuse plaintiffs' forfeiture.

### III.

We turn, then, to the first step of the anti-SLAPP analysis—whether plaintiffs' claims are based on Clearview's protected activity. On appeal, Clearview renews its arguments that its conduct is protected under subdivisions (e)(2) and (e)(4) of section 425.16. In this section, we take up Clearview's argument that the app's delivery of images of potentially matching faces and the associated webpage URLs in response to a probe image uploaded by a law enforcement agency is protected as a statement "in connection with an issue under consideration or review" by an "executive . . . body" or by "any other official proceeding authorized by law." (§ 425.16, subd. (e)(2).)[2]

---

[2] Clearview focuses primarily on the reference to "any other official proceeding authorized by law" and does not develop any argument that a police investigation amounts to the consideration or review of an issue by an executive body. In the trial court, Clearview pointed only to the "official proceeding" prong.

To begin with, plaintiffs dispute that their claims seek to hold Clearview liable for supplying facial matches to law enforcement in criminal investigations. They contend that their claims and injury "rest on Clearview's collection, analysis, and storage of their likenesses and identifying information for profit," regardless of who Clearview's customers are and the purposes for which they use its service. If all references to law enforcement were excised from the complaint, they argue, the claims asserted against Clearview would remain exactly the same. (See *Park, supra*, 2 Cal.5th at p. 1068 [plaintiff " 'could have omitted allegations regarding communicative acts of filing a grievance and still state the same claims' "]; *Manlin v. Milner* (2022) 82 Cal.App.5th 1004, 1020.)

It is Clearview's burden to demonstrate that the activity it claims is protected "supplies one or more elements of a plaintiff's claims." (*Wilson, supra*, 7 Cal.5th at p. 887; see *Littlefield v. Littlefield* (2024) 106 Cal.App.5th 815, 826–827.) Yet Clearview fails in its opening brief to identify the elements of plaintiffs' claims and show how its furnishing of information to law enforcement agencies supplies one or more of those elements. Arguments not raised in the opening brief are forfeited. (*People v. Clark* (2016) 63 Cal.4th 522, 552; *Dameron Hospital Assn. v. AAA Northern California, Nevada & Utah Ins. Exchange* (2022) 77 Cal.App.5th 971, 982.) Moreover, Clearview's principal argument on the point in its reply brief is that the complaint "repeatedly states that [plaintiffs'] motivation in bringing this suit is to prevent Clearview from speaking to law enforcement, in particular U.S. Immigration and Customs Enforcement." Plaintiffs' motivation for filing suit is not the relevant inquiry. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) Not all people who believe themselves to be a victim of a tort respond with a lawsuit, and the considerations that lead them do so in a given case

10

may not overlap with the elements of the cause of action. (See *Park, supra*, 2 Cal.5th at p. 1064.)

Instead of showing how the furnishing of images to law enforcement supplies an element of plaintiffs' claims, Clearview's opening brief argued that claims targeting its creation and maintenance of the database are proper subjects of an anti-SLAPP motion because Clearview cannot offer its facial recognition service without the database. But Clearview has not identified any authority holding that an anti-SLAPP motion lies against claims challenging unprotected activity if the activity is a precursor to subsequent conduct that is protected under subdivision (e)(2). In its opening brief, it cited *Buehrle v. City of Key West* (11th Cir. 2015) 813 F.3d 973, which held that both the act of tattooing and the wearing of a tattoo are protected by the First Amendment. The analogy is not entirely on point—the court found that the practice of tattooing is itself expressive conduct, and thus not protected simply as a necessary precursor to wearing a tattoo (*Buehrle*, at p. 978)—and in any event, it ignores the rule that protected status is determined by the definitions in the anti-SLAPP statute rather than by First Amendment law. (*City of Montebello v. Vasquez, supra*, 1 Cal.5th at p. 422.) In its reply brief, Clearview cites *Iloh v. Regents of University of California* (2023) 94 Cal.App.5th 947, 959 and *Ojjeh v. Brown* (2019) 43 Cal.App.5th 1027, 1041, but those cases were applying subdivision (e)(4) of section 425.16, not subdivision (e)(2). Subdivision (e)(4) is broader than the other subdivisions insofar as it reaches conduct "in furtherance of" the right of petition or of free speech, but it is narrower insofar as it requires the moving party to show that the speech the conduct furthers is in connection with an issue of public interest. As we discuss in the next section, Clearview fails to make that

11

showing. We decline to expand subdivision (e)(2) beyond its plain language as Clearview would have us do.

Because Clearview has forfeited any argument that its communications with law enforcement supply one or more elements of plaintiffs' claims, we need not decide the applicability of subdivision (e)(2) on the merits. We find inapposite, however, Clearview's reliance solely on cases involving communications with law enforcement about a potential violation of the law, which held such communications protected by analogizing to the scope of the litigation privilege. (See *Dickens v. Provident Life & Accidents Ins. Co.* (2004) 117 Cal.App.4th 705, 714–715; *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 784.)[3] " '[T]he purpose of [section 425.16,] subdivision (e)(1) and (2) is essentially to protect the activity of petitioning the government for redress of grievances and petition-related statements and writings.' " (*Doe v. Ledor* (2023) 97 Cal.App.5th 731, 743 (*Doe*).) Unlike the cases on which it relies, Clearview is neither reporting a crime nor asking the government to do anything. It does not articulate any particular interest in being heard. For these reasons, were we to reach the merits, we would find that Clearview's furnishing of photos and webpage URLs to government entities that subscribe to its service does not qualify for protection under subdivision (e)(2) of section 425.16. (See *FilmOn, supra*, 7 Cal.5th at p. 144 ["we interpret statutory language within its context, and

---

[3] Clearview also cites *Anders v. Cuevas* (6th Cir. 2021) 984 F.3d 1166, 1185 for the proposition that "[c]ooperation with law enforcement—even for a discreet investigation—is constitutionally protected activity," but that case does not concern the reach of the anti-SLAPP law and also involved a report of suspected unlawful conduct: The owner of a towing company identified to an internal affairs investigator state troopers to whom he had given tickets to sporting events. (*Id.* at p. 1171.)

in light of its structure, analogous provisions, and any other appropriate indicia of its purpose"].)

## IV.

We consider next Clearview's argument that its activities in creating and maintaining its database are protected as "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).)

## A.

For the purposes of analyzing the applicability of this subdivision, the parties agree that plaintiffs' claims are based on Clearview's creation and maintenance of its database, disagreeing only about whether those activities qualify for protection. Plaintiffs cite a federal decision in related multidistrict litigation holding that, while capturing publicly available photographs from the internet may be considered speech, Clearview's harvesting of an individual's unique (and nonpublic) biometric data is not. (*In re Clearview AI, Inc., Consumer Privacy Litig.* (N.D.Ill. 2022) 585 F.Supp.3d 1111, 1120.) As noted above, however, subdivision (e)(4) of section 425.16 protects conduct "in furtherance" of the right of free speech, so Clearview does not have to show that the conduct giving rise to plaintiffs' claims is itself speech. (*Bonni v. St. Joseph Health System, supra*, 11 Cal.5th at p. 1020.) For example, in *Ross v. Seyfarth Shaw LLP* (2023) 96 Cal.App.5th 722, the court held that subdivision (e)(4) of section 425.16 protected not only a report to officials at a public university but also the defendants' "noncommunicative investigative conduct" that furthered the report's preparation. (*Id.* at p. 739.)

13

Plaintiffs do not appear to dispute that the app's delivery of search results to law enforcement agencies can be considered an exercise of Clearview's right of free speech, but they argue that "incidental speech at the endpoint of the process for some customers is a tail that cannot wag the dog of Clearview's unlawful biometric harvesting and maintenance conduct." They point to the Supreme Court's statement that "a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park, supra*, 2 Cal.5th at p. 1060.) But *Park* involved a different scenario: The court found that the plaintiff's claims were based on a *later* unprotected act (the denial of tenure) and not on the precursor acts of alleged protected activity (the deliberations that led to the tenure decision). (*Park, supra*, 2 Cal.5th at pp. 1067–1071.) Here, plaintiffs' claims are based on activities that are necessary precursors to Clearview's speech (i.e., the app's delivery of search results). As *Park* elsewhere explained, " 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.' " (*Id*. at p. 1063.) Here, plaintiffs' claims arise from Clearview's "act" of creating and maintaining its database, and that act is "in furtherance of" its right of free speech. In this context, we disagree with plaintiffs' characterization of Clearview's speech as "incidental" to the database. Without the ability to sell search results, Clearview would have no reason to create the database in the first place.

**B.**

Having concluded that plaintiffs' claims arise from conduct in furtherance of Clearview's exercise of its right to free speech, we must next analyze whether the app's delivery of photos and webpage URLs to law enforcement agencies constitutes speech "in connection with a public issue or

14

an issue of public interest." (§ 425.16, subd. (e)(4).) The parties agree that the resolution of that issue requires us to apply the two-part test in *FilmOn, supra*, 7 Cal.5th 133. "First, we ask what 'public issue or . . . issue of public interest' the speech in question implicates—a question we answer by looking to the content of the speech. [Citation.] Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest." (*Id*. at pp. 149–150.)

Answering the first question, Clearview proposes that its communications implicate the "public interest in identifying, locating, and apprehending suspected criminals, victims, and persons of interest." Plaintiffs point out that not every crime is the subject of widespread public attention (see *Anderson v. Geist* (2015) 236 Cal.App.4th 79, 87), but we do not understand Clearview's position to depend on the notoriety of any particular crime or the degree of interest in the progress of any particular investigation (which may be conducted confidentially). It is fair to say that the public generally has an interest in the identification and apprehension of people who are suspected of criminal activity, including crimes that are minor or otherwise do not receive significant notice. Beyond the harm to any individual victims, crimes are offenses committed against the public (*People v. Hall* (1933) 133 Cal.App. 40, 45), and society has an "interest in seeing that criminals are properly punished" (*In re Saul S*. (1985) 167 Cal.App.3d 1061, 1067). In our view, the public has a sufficient interest in the identification of individuals who are suspected of committing crimes, or of witnesses who may be able to help the police solve them, to satisfy *FilmOn*'s first step.

To answer *FilmOn*'s second question, we must address "the specific nature of defendant's speech and its relationship to the matters of public interest." (*FilmOn, supra*, 7 Cal.5th at p. 152.) We consider the context,

"including audience, speaker, and purpose." (*Id.* at pp. 151–152.) To begin with, Clearview is a for-profit corporation, and whatever investigative purposes its government customers may have, *Clearview*'s purpose in offering a facial recognition service is a commercial one, with its customer base defined by a consent judgment entered in the settlement of litigation. Moreover, Clearview delivers its search results in confidence, expressly prohibiting any public disclosure of them, including later use in court. These factors weigh against a conclusion that its speech is in connection with an issue of public interest. (See, e.g., *id.* at p. 153 [reports issued to paying clients that were not intended to enter the public sphere were not protected]; *Doe, supra*, 97 Cal.App.5th at p. 747 [no evidence that sender of emails intended them to reach the public sphere or that they did reach it].) But while these considerations are relevant, they are not dispositive. (*FilmOn, supra*, 7 Cal.5th at p. 148.) Unlike cases in which the statements are intended only for the recipient's private use, here law enforcement agencies use the information Clearview supplies for a purpose that serves a public interest—the potential identification of individuals who are suspected of committing crimes or who may have information that could assist the law enforcement agency in solving them.

As the court wrote in *FilmOn*, however, "[w]e are not concerned with the social utility of the speech at issue, or the degree to which it propelled the conversation in any particular direction; rather, we examine whether a defendant—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest." (*FilmOn, supra*, 7 Cal.5th at p. 151.) As a tool that can potentially assist law enforcement agencies in solving crimes, Clearview's app may have social utility, but that fact alone does not make it a contribution to public *discourse*

16

or mean that the search results convey an opinion or viewpoint on a public issue. (See *Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1255 [defendants' conduct was protected because it "furthered public discussion of the public issues it implicated"]; *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 898 ["the statement must in some manner itself contribute to the public debate"].) Even accepting Clearview's contention that its app supplies *information* (unlike the trial court's examples of "cars, uniforms, and computer systems"), Clearview identifies no authority to support a conclusion that every informational input or datum that facilitates routine policework is, simply for that reason, speech concerning a public issue within the meaning of subdivision (e)(4) of section 425.16.

Again, Clearview does not know what investigation the government entity is conducting. It cannot see the searches that are run on the app. While data from the app may help law enforcement agencies identify individuals who are of interest to them, Clearview does not purport to provide substantive information about the people depicted in the search results, including their connection to any possible crime. Combining these considerations with Clearview's commercial purpose and its prohibition on its customers' public disclosure of the app or its search results, we conclude that Clearview is not engaged in speech in connection with a public issue or issue of public interest under subdivision (e)(4) of section 425.16. In *FilmOn*'s words, the confidential search results delivered by Clearview's app "are too tenuously tethered to the issues of public interest they implicate, and too remotely connected to the public conversation about those issues, to merit protection under the catchall provision." (*FilmOn, supra*, 7 Cal.5th at p. 140.)

17

## V.

Because we conclude that Clearview failed to carry its burden at the first step of the anti-SLAPP analysis, we have no reason to reach the second. (*Littlefield v. Littlefield, supra*, 106 Cal.App.5th at p. 824.)

## DISPOSITION

The order denying Clearview's anti-SLAPP motion is affirmed. Plaintiffs are entitled to recover their costs on appeal.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
SIGGINS, J. [*]

---

[*] Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.