Filed 5/27/25  Escamilla v. Perry CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DANIEL ESCAMILLA, | |
| Plaintiff and Appellant, | G063857 |
| v. | (Super. Ct. No. 30-2023-01321288) |
| MICHAEL RAYMOND PERRY et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Deborah C. Servino, Judge. Affirmed in part, reversed in part, and remanded with instructions.

Law Offices of Seth M. Goldberg and Seth M. Goldberg for Plaintiff and Appellant.

The Perry Law Firm, Matthew J. Bertolucci, and Larry M. Roberts for Defendants and Respondents.

\*          \*          \*

This case arises from a judgment of dismissal following an anti-SLAPP motion. The litigation history giving rise to the anti-SLAPP motion is somewhat convoluted. Its genesis was an explosion at a restaurant in which one of the owners was badly injured. Defendants are long-standing attorneys for the owners of the restaurant. Plaintiff Escamilla had an intermittent working relationship with the owners in various capacities. After the explosion, Escamilla attempted to take over the owners' media and legal response. Defendant Perry asserted that Escamilla was engaging in the unauthorized practice of law and was ultimately able to wrest control of the owners' media and legal response from Escamilla.

Escamilla then sued defendants for, among other things, slander. Defendants responded with a cross-complaint for intentional interference with economic and contractual relations. Escamilla, in turn, filed an anti-SLAPP motion (not the one at issue here), which the trial court granted, dismissing the cross-complaint. We affirmed that dismissal in a prior appeal. (*Perry v. Escamilla* (Dec. 16, 2022, G060957) [nonpub. opn.] (*Perry I*)) We concluded that defendants had not shown a probability of prevailing on the merits because defendants, the attorneys, had not been harmed by Escamilla's conduct; if anything, they stood to receive additional attorney fees for having to clean up Escamilla's "mess."

Escamilla then turned around and filed the complaint at issue here for malicious prosecution and abuse of process (a SLAPPback action). The malicious prosecution claim is based on the filing of the cross-complaint that was the subject of the prior appeal. The abuse of process claim is based on a subpoena defendants issued in connection with Escamilla's prior complaint (for slander) in which defendants sought Escamilla's State Bar records. In response to the SLAPPback action, defendants filed the anti-

SLAPP motion at issue here. The trial court granted the motion, concluding that Escamilla had failed to demonstrate a probability of prevailing because he could not show the underlying cross complaint lacked probable cause, and he could not show defendants had acted with malice. Escamilla appealed.

We reverse in part and affirm in part. With respect to three of the four defendants (Michael Perry, Larry Roberts, and The Perry Law Firm), the anti-SLAPP motion was untimely. The court erroneously ruled that it was timely. Due to its error, the court never considered whether to exercise its discretion to consider an untimely anti-SLAPP motion. We will remand with instructions to do so. With respect to defendant Christopher Hoo, the anti-SLAPP motion was timely.

On the merits, we conclude the court erred in dismissing Escamilla's malicious prosecution claims. This court's prior finding that defendants' cross-complaint lacked even minimal merit was sufficient to establish at least prima facie evidence that defendants lacked probable cause. Moreover, our high court has held that bringing an action without probable cause permits an inference of malice. That inference, though it may ultimately be rejected by the trier of fact, is sufficient to clear the low hurdle of prima facie evidence. The court erred in concluding Escamilla failed to establish a probability of prevailing on his malicious prosecution claims.

However, we agree with the court that Escamilla failed to show a probability of prevailing on his abuse of process claim. Although the subpoena defendants issued to the State Bar may have been overbroad, it had a facially legitimate purpose, and there was no evidence that defendants propounded the subpoena for an improper purpose.

Accordingly, we will reverse the trial court's ruling on the malicious prosecution claims, affirm as to the abuse of process claim against Hoo, and remand for the court to consider whether to accept the late filing from the remaining defendants.

FACTS

I.

THE RESTAURANT EXPLODES; PERRY AND ESCAMILLA VIE FOR CONTROL OVER THE OWNERS' RESPONSE

On October 5, 2019, three electrical transformers owned and operated by Southern California Edison (SCE) exploded inside a concrete vault located at the Old World Restaurant (Old World) in Huntington Beach. There were multiple injuries, but the most seriously injured was Bern Bischof, one of the owners of Old World, who suffered third-degree burns and was rushed to an intensive care unit.

Escamilla claims he arrived minutes after the explosion and accompanied Bischof in the ambulance together with Bischof's sister, Cyndie Kasko. The next morning, Kasko asked Escamilla to give a statement to the news media, who were congregating in the Old World parking lot. Escamilla claims he "was specifically asked to be the Old World spokesperson regarding the incident." Defendants claim Escamilla was given only "limited authority on behalf of [Kasko], [Bischof], and [Old World], to make a statement to the media that the family was appreciative of the outpouring of support, and to voice support for the other injured individuals."

Subsequently, Escamilla acted as the "legal liaison" for Old World. In that capacity, he met with an inspector from the Occupational Safety and Health Administration (OSHA) and representatives of Southern California Edison (SCE). Escamilla retained a forensic expert to observe

4

SCE's remediation of the explosion area and to ensure the preservation of evidence.

The following day, Perry arrived at Old World, and with profanity-laced shouting, accused Escamilla of practicing law without a license. (Perry claims he resorted to shouting and profanity because Escamilla was attempting to prevent him from speaking with Kasko.) From that point on, Old World and the owners ceased working with Escamilla and instead had Perry serve as the point person for their media and legal response.

## II.

### ESCAMILLA AND PERRY SUE EACH OTHER; PERRY'S CROSS-COMPLAINT IS DISMISSED AS A SLAPP; THE DISMISSAL IS AFFIRMED

About a month later, in November 2019, Escamilla sued Perry and his law firm (The Perry Law Firm) for, among other things, slander, alleging Perry "falsely accus[ed] [Escamilla] of 'practicing law without a license' . . . ." Sometime around March 2019, Perry and his firm filed a cross complaint against Escamilla, asserting causes of action for intentional interference with contractual and economic relations.

In response to the cross complaint, Escamilla filed an anti-SLAPP motion pursuant to Code of Civil Procedure section 425.16.[1] The trial court granted Escamilla's motion. On the first step of the anti-SLAPP analysis, the trial court found Escamilla carried his burden to show appellants' claims arose from protected activity. On the second step of the analysis, the court found appellants had not met their burden to show a probability of prevailing because they had not demonstrated an existing

---

[1] All statutory references are to the Code of Civil Procedure unless stated otherwise.

5

contract between Perry and any of the third parties, nor independently wrongful conduct by Escamilla as required for economic interference claims, nor evidence of actual harm. Perry and his firm appealed.

In *Perry I*, a panel of this court affirmed the dismissal of defendants' cross-complaint. It was undisputed that Escamilla's conduct arose out of protected activity, and thus the focus was on whether Perry and his firm had demonstrated a probability of success on the merits. This court concluded they had not because they did not have a viable theory of damages. The court explained, "The facts alleged have more to do with harm potentially suffered by the third parties as opposed to appellants, as a result of the alleged 'mess' created by Escamilla. Appellants have not alleged a loss specific to their business involving a client or retention for services to be performed. On the contrary, the record is clear appellants' economic relationship with the third parties, as it relates to the underlying explosion incident, proceeded and could even have been galvanized by Escamilla's conduct . . . . [¶] Appellants also do not allege a diminution in recovery of their attorney fees. Indeed, the record could reasonably be read to support the opposite conclusion—i.e., that the alleged 'mess' created by Escamilla generated additional fees for appellants because of additional attorney services necessitated by his conduct."

III.

ESCAMILLA SUES FOR MALICIOUS PROSECUTION AND ABUSE OF PROCESS; THE TRIAL COURT GRANTS AN anti-SLAPP MOTION

Subsequently, in April 2023, Escamilla filed the action at issue here, which he characterized as a "SLAPPback" action under section 425.18. He asserted causes of action for malicious prosecution (counts 1-3) and abuse of process (count 4) against Perry, his firm, and two attorneys at his firm

(Christopher Hoo and Larry M. Roberts). The malicious prosecution counts were based on the cross-complaint that had previously been dismissed. The abuse of process count was based on a subpoena duces tecum from the underlying litigation that defendants had served upon the State Bar of California. The trial court had quashed the subpoena, concluding it was overbroad.

The defendants stipulated that defendants Perry, The Perry Law Firm, and Roberts were served with the complaint on May 10, 2023. Defendant Hoo agreed to be served via e-mail on June 8, 2023 (these dates will prove to be important).

In response, defendants filed an anti-SLAPP motion on October 6, 2023, which is the subject of this appeal. The court granted the motion. The court concluded that the 120-day deadline for an anti-SLAPP motion in response to a SLAPPback action applied and that the defendants' motions were timely. The court concluded Escamilla had failed to show a probability of prevailing on the merits because Perry's underlying interference claims were supported by probable cause and there was no evidence that defendants acted with malice. Escamilla appealed from the ensuing judgment.

DISCUSSION

On appeal, Escamilla claims the court erred in granting the anti-SLAPP motion for three reasons: (1) the motion was untimely, (2) the "illegality exception" barred the anti-SLAPP motion, and (3) he demonstrated a probability of prevailing on the merits. We address each in turn.

### THE MOTIONS WERE UNTIMELY AS TO PERRY, PERRY'S FIRM, AND ROBERTS; WE REMAND FOR THE COURT TO EXERCISE ITS DISCRETION

Section 425.18 governs special motions to strike filed in response to a SLAPPback, which is defined as "any cause of action for malicious prosecution or abuse of process arising from the filing or maintenance of a prior cause of action that has been dismissed pursuant to a special motion to strike under Section 425.16." (Code Civ. Proc., § 425.18, subd. (b)(1).) An anti-SLAPP motion to strike a SLAPPback must be filed within 120 days of service of the complaint, or, at the court's discretion, within six months. (§ 425.18, subd. (d)(1)(A)–(B).) By contrast, a standard anti-SLAPP motion must be filed within 60 days of service, though the court has discretion to accept a later filing. (§ 425.16, subd. (f).)

As an initial matter, Escamilla contends that only his malicious prosecution claims qualify as a SLAPPback, and that his abuse of process claim is subject to the shorter 60-day deadline. We disagree.

We reject Escamilla's argument that only part of his complaint qualifies as a SLAPPback. In his complaint, Escamilla expressly alleged: "This action is a SLAPPback action under . . . section 425.18 because each cause of action for malicious prosecution arises from the filing or maintenance of a prior cause of action that has been dismissed pursuant to a special motion to strike under Section 425.16." By this language, Escamilla identified the entire action—not just specific causes of action—as a SLAPPback. Although the basis for that designation may have been the malicious prosecution claims, Escamilla cannot represent to defendants that the entire lawsuit is a SLAPPback and then later seek to impose a shorter filing deadline by narrowing that designation. Accordingly, we consider him

estopped from denying that the entire action is subject to the SLAPPback framework. (Evid. Code, § 623 ["Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it."].) Thus, the 120-day deadline applies.

Even under that longer deadline, however, defendants Perry, The Perry Law Firm, and Roberts filed their motion late. They were served with the complaint on May 10, 2023. 120 days later was Thursday, September 7, but they did not serve their anti-SLAPP motion until October 6, 2023. The trial court concluded defendants had satisfied the 120-day deadline, but the court did not explain how it performed that calculation, and we are aware of no calculation that would support it.

But that is not the end of the analysis. The court had discretion to accept a late filing from Perry, The Perry Law Firm, and Roberts. (§ 425.18, subd. (d)(1)(B).) And there certainly are grounds in this case that would support the court permitting a late filing. The defendants, who essentially acted in concert, were served at different times. And Escamilla never filed a proof of service, but instead resorted to more informal e-mail agreements. Moreover, there does not appear to be any harm to Escamilla in accepting a late motion. These circumstances would support the court exercising its discretion to permit a relatively short extension (less than one month) of the filing deadline. But it is ultimately the trial court's decision, and thus we will remand for the court to exercise its discretion.

The result is different for defendant Hoo. Hoo was served on June 8, 2023. 120 days later was October 6, which was the exact day defendants filed their motion. Hoo's motion was thus timely.

9

## II.

### THE ILLEGALITY PROHIBITION DOES NOT APPLY

Escamilla further argues that, beyond being untimely, the anti-SLAPP motions were barred as a matter of law. Section 425.18 includes a narrow prohibition on anti-SLAPP motions in SLAPPback actions where the underlying lawsuit was illegal. Subdivision (h) provides: "A special motion to strike may not be filed against a SLAPPback by a party whose filing or maintenance of the prior cause of action from which the SLAPPback arises was illegal as a matter of law." To illustrate the statute's scope, consider a hypothetical in which a corporation files a lawsuit that is wholly unlawful and intended solely to chill a protestor's speech. The court dismisses that lawsuit as a SLAPP. If the protestor later brings a malicious prosecution action—the SLAPPback—the corporation would be barred from filing an anti-SLAPP motion in that subsequent case. In such circumstances, the illegality of the original action categorically precludes the use of the anti-SLAPP procedure in the SLAPPback.

However, for the illegality prohibition to apply, the illegality must either be *undisputed* or *conclusively established* as a matter of law. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 285 ["if a defendant's assertedly protected constitutional activity is alleged to have been illegal and, therefore, outside the ambit of the anti-SLAPP statute, the illegality must be established as a matter of law either through the defendant's concession or because the illegality is conclusively established by the evidence presented in connection with the motion to strike."].)

Here, defendants dispute that their cross-complaint was unlawful, and thus we may apply the illegality prohibition only if Escamilla's evidence established that their maintenance of the underlying cross-complaint was

10

unlawful as a matter of law. Escamilla points to three statutes that he contends rendered the defendants' cross-complaint illegal as a matter of law.

*A. Business and Professions Code section 6060.25*

Escamilla first relies on Business and Professions Code section 6060.25, which protects the confidentiality of certain information in State Bar admission records. He contends that defendants' subpoena for his State Bar file violated this statute and was therefore illegal (we discuss the subpoena in detail below). But even assuming the subpoena was improper, the illegality prohibition bars anti-SLAPP motions only where the "*cause of action*" giving rise to the SLAPPback was illegal as a matter of law. (§ 425.18, subd. (h) (italics added).) A discovery subpoena is not a cause of action. And section 6060.25 has no bearing on the legal viability of defendants' underlying tortious interference causes of action. Accordingly, this statute cannot support application of the illegality prohibition.

*B. Labor Code section 1102.5*

Next, Escamilla points to Labor Code section 1102.5, which, broadly speaking, prohibits an *employer* from retaliating against an *employee* for whistleblowing. Escamilla contends the entire cross-complaint ran afoul of this section. What Escamilla never explains, however, is how he and defendants formed an employment relationship, which is a necessary condition to applying Labor Code section 1102.5. Escamilla may have had an employment relationship with the restaurant owners at some point, but there is nothing to suggest such a relationship with defendants. And defendants' underlying cross-complaint sought damages for themselves, not to vindicate any rights of the owners. In the absence of an employment relationship, Labor Code section 1102.5 does not apply.

11

*C. Rule 3.1 of the Rules of Professional Conduct*

Lastly, Escamilla cites Rule 3.1, subdivision (a)(1), of the Rules of Professional Conduct, which states, "A lawyer shall not: [¶] bring or continue an action, conduct a defense, assert a position in litigation, or take an appeal, without probable cause and for the purpose of harassing or maliciously injuring any person . . . ."

This argument, too, fails to reckon with the plain language of the rule. Rule 3.1 is violated only if the lawyer asserts a litigation position "for the purpose of harassing or maliciously injuring any person . . . ." Even if we accept, *arguendo*, that defendants cannot show the underlying cross-complaint was supported by probable cause, there is nothing in the record to *conclusively establish* that defendants filed their action for the purpose of harassment or injury, and defendants dispute that allegation.

Because none of the laws relied on by Escamilla rendered the underlying cross-complaint illegal as a matter of law, the illegality prohibition under section 425.18, subdivision (h), does not apply.

III.

ESCAMILLA SHOWED A PROBABILITY OF PREVAILING ON THE MERITS

Having concluded defendants' motions were not barred by the illegality prohibition, we turn to the merits of the anti-SLAPP motion.

The anti-SLAPP statute provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) "Section 425.16, subdivision (b)(1) requires the

12

court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)

Here, there is essentially no dispute that Escamilla's SLAPPback action arises out of protected activity: he sued defendants for having sued him. We thus proceed to the second phase, which is whether Escamilla has established a probability of prevailing on his claims.

In the second phase of the anti-SLAPP analysis, "the burden shifts to the plaintiff . . . to establish a probability it will prevail on the claim. [Citation.] The plaintiff need only state and substantiate a legally sufficient claim. [Citation.] The plaintiff's evidence is accepted as true; the defendant's evidence is evaluated to determine if it defeats the plaintiff's showing as a matter of law. [Citation.] The procedure is meant to prevent abusive SLAPP suits, while allowing 'claims with the requisite minimal merit [to] proceed.'" (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 420.) "Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.)

We turn now to the elements Escamilla was required to establish for his causes of action for malicious prosecution and abuse of process.

*A. Malicious Prosecution*

"To prevail on a malicious prosecution claim, the plaintiff must show that the prior action (1) was commenced by or at the direction of the

13

defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated with malice." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292 (*Soukup*)) "The question of probable cause is 'whether as an objective matter, the prior action was legally tenable or not.' [Citation.] 'A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him.' [Citation.] 'In a situation of complete absence of supporting evidence, it cannot be adjudged reasonable to prosecute a claim.'" (*Ibid.*) "'The "malice" element . . . relates to the *subjective intent or purpose* with which the defendant acted in initiating the prior action. [Citation.] The motive of the defendant must have been something other than that of bringing a perceived guilty person to justice or the satisfaction in a civil action of some personal or financial purpose. [Citation.] The plaintiff must plead and prove actual ill will *or* some *improper* ulterior motive.'" (*Ibid.*)

Escamilla contends defendants lacked probable cause to bring the interference claims as demonstrated by the fact that the action was dismissed as a SLAPP, which was affirmed on appeal on the ground that defendants had no viable damages theory. Defendants respond by arguing (1) the ruling dismissing the cross complaint as a SLAPP is "inadmissible," and (2) defendants presented evidence in *this* action (which, they explain, they had to omit in the prior action for tactical reasons) that demonstrates a viable damages theory. We conclude Escamilla has at least made a prima facie case that the underlying cross complaint lacked probable cause.

Defendants' argument that the SLAPP ruling is inadmissible is based on section 425.16, subdivision (b)(3), which states, "If the court determines that the plaintiff has established a probability that the plaintiff will prevail on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the case, or in any subsequent action . . . ." However, defendants get the statute backwards. This statute applies if a plaintiff (which, in this case, would be defendants as cross-complainants below) *establishes* a probability of prevailing on the merits. Defendants did the opposite: they failed to establish a probability of prevailing. As a result, this statute simply does not apply.

Defendants' argument that subsequent evidence establishes probable cause for the underlying tortious interference claims is based on a declaration submitted by Bern Bischof in support of defendants' anti-SLAPP motion. Bischof declared, "but for Daniel Escamilla's actions, I would have asked The Perry Law Firm . . . to handle the following tasks following the incident . . . .: discussions with any Cal-OSHA Investigator and/or the media, communicating with [Southern California Edison] (until I engaged a personal injury attorney) and the Old World management team, and coordinating referrals to personal injury attorneys. However, Daniel Escamilla usurped all of this work from The Perry Law Firm . . . ." As to why Bischof did not provide similar testimony in the underlying cross-complaint, he attested, "Previously, Mr. Perry was limited to what he was authorized to provide the Court regarding his representation of [Old World] and my family members due to the recently concluded litigation with Southern California Edison. The matter is now concluded, and I am able to provide full and complete details of Mr. Perry's representation of WCSL and my family members while not waiving the attorney-client privilege."

15

While Bischof's declaration may be helpful evidence for defendants as this litigation continues, it does not defeat Escamilla's showing as a matter of law. Bischof's credibility is subject to being attacked. We cannot simply accept that testimony as conclusive. And the fact of the matter is, both the trial court and this court made clear findings in the underlying litigation that defendants' tortious interference claims lacked even minimal merit. That evidence is sufficient to clear the low hurdle of prima facie evidence that defendants' tortious interference claims lacked probable cause.

As to the malice element, which focuses on defendants' subjective intent in bringing the tortious interference claims, Escamilla claims the fact defendants brought claims against him lacking even minimal merit is itself evidence of malice. While our high court has held that the dismissal of an underlying lawsuit as a SLAPP does not "necessarily"—i.e., "by definition"—establish malice, it also held that, for purposes of a prima facie showing, "malice can be inferred from the evidence that defendants lacked probable cause to initiate and maintain the underlying lawsuit . . . ." (*Soukup, supra,* 39 Cal.4th at p. 296.) In addition to the evidence that defendants maintained the underlying tortious interference claims without probable cause, there was also evidence of Perry subjecting Escamilla to profanity-laced shouting, which suggests a degree of hostility that arguably supports a finding of malice. The evidence, taken together, was sufficient to establish a prima facie case of malice.

Because Escamilla made a prima facie showing of each of the elements of his malicious prosecution claims, we will reverse the court's judgment dismissing those causes of action as a SLAPP.

16

*B. Abuse of Process*

We come to the opposite conclusion regarding Escamilla's abuse of process claim.

"The common law tort of abuse of process arises when one uses the court's process for a purpose other than that for which the process was designed. [Citations.] It has been 'interpreted broadly to encompass the entire range of "procedures" incident to litigation.' [Citation.] '[T]he essence of the tort [is] . . . misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice.' [Citation.] To succeed in an action for abuse of process, a litigant must establish that the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056-1057.)

Escamilla's abuse of process claim is based on a subpoena defendants issued to the State Bar of California, seeking records related to his licensure and disciplinary history.[2] Escamilla contends the subpoena ran afoul of Business and Professions Code section 6060.25, subdivision (a),

---

[2] Specifically, the subpoena sought: "Any and all RECORDS, including, but not limited to, memoranda, notes, bank statements, quarterly statements, portfolios, evidence of deposits, deposit detail, cancelled checks, loan applications, signature cards, credit card applications, financial statements and/or other requests for extension of credit, which evidence any attorney records, including, state bar discipline and/or investigation records and Office of Chief Trial Counsel records, bar exam applications, bar exam test results, bar membership applications, bar membership results, bar admission records, certificates of standing, moral character records, fee arbitration settlement records, records related to any investigations or disciplinary hearings related to the Unauthorized Practice of Law, and Board of Trustee records for [Escamilla]."

which provides, in relevant part, "any identifying information submitted by an applicant to the State Bar for admission and a license to practice law and all State Bar admission records . . . shall be confidential and shall not be disclosed pursuant to any state law . . . ." The trial court ultimately quashed the subpoena, finding it overbroad. Specifically, the court reasoned that while defendants had a legitimate interest in rebutting Escamilla's slander claim by showing he engaged in the unauthorized practice of law, the subpoena exceeded that purpose by seeking personal and sensitive records related to Escamilla's application to the state bar that went beyond what was necessary for their defense.

This procedural history is not evidence that defendants utilized the subpoena for a purpose other than what it was designed for.

On its face, the subpoena had a legitimate objective. Escamilla claimed defendants committed slander by saying he was engaged in the unauthorized practice of law. One obvious defense to that claim is truth, i.e., for defendants to prove that Escamilla was, in fact, engaged in the unauthorized practice of law. A subpoena for State Bar records to establish that Escamilla was not a licensed attorney at the time was likely to produce documents relevant to that issue.

The fact that the subpoena was overbroad does not, in and of itself, suggest an improper purpose. Discovery requests are commonly drafted broadly, and there is good reason for that: the propounding party often does not know what records exist, and so the request is cast in broad terms. This should not, in the ordinary course, subject the propounding party to personal liability. After the trial court quashed the subpoena, there is no evidence in the record that defendants pursued it any further, nor that the subpoena was part of a pattern of discovery harassment. In this context, the fact that the

18

subpoena was ruled to be overbroad does not present even prima facie evidence that defendants acted with an ulterior motive. And Escamilla does not point to any other evidence of an improper purpose. Accordingly, the court did not err in granting Hoo's anti-SLAPP motion as to the abuse of process claim.

## DISPOSITION

The judgment is reversed as to Escamilla's malicious prosecution claims (causes of action 1 through 3) against all defendants.

The judgment is also reversed as to Escamilla's abuse of process claim (cause of action 4) against defendants Perry, The Perry Law Firm, and Roberts. The matter is remanded for the trial court to determine, in its discretion, whether to consider their untimely anti-SLAPP motion. If the court elects to do so, it may reinstate its prior order granting the motion as to the abuse of process claim.

The judgment is affirmed as to the abuse of process claim against defendant Hoo. The parties shall bear their own costs on appeal.

SANCHEZ, ACTING P. J.

WE CONCUR:

MOTOIKE, J.

GOODING, J.

20